UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

**NOT FOR PUBLICATION**

| | |
|---|---|
| GREGG C. REVELL and ASSOCIATION OF NEW JERSEY RIFLE AND PISTOL CLUBS, INC., <br><br> Plaintiffs, <br><br> v. <br><br> PORT AUTHORITY OF NEW YORK AND NEW JERSEY, et al., <br><br> Defendants. | Civil Action No. 06-402 (KSH) <br><br><br><br> **OPINION** |

**KATHARINE S. HAYDEN, U.S.D.J.**

In this § 1983 case, Plaintiff Gregg Revell ("Revell") claims that Port Authority Police Officer Scott Erickson ("Erickson") and the Port Authority of New York and New Jersey ("the Port Authority") violated his rights, privileges, or immunities secured by 18 U.S.C. § 926A when Erickson arrested him in Newark Liberty International Airport in Newark, New Jersey for possession of a firearm without a license and for possession of hollow point bullets. Revell also claims that Erickson and the Port Authority violated his Fourteenth Amendment right to due process of law by retaining, without providing notice and an opportunity to be heard, the firearm, holster, locks, hard case containers and ammunition seized from him during the arrest. Revell seeks both monetary and injunctive relief. Plaintiff Association of New Jersey Rifle and Pistol Clubs, Inc. (the "Association"), a non-profit membership corporation organized to protect the rights of its members and the public to possess and carry firearms and ammunition, seeks purely injunctive relief in the

form of an order enjoining Erickson and the Port Authority from enforcing certain New Jersey gun laws against non-resident Association members who are transporting firearms and ammunition through New Jersey in compliance with § 926A .

Erickson and the Port Authority have moved to dismiss the complaint on several grounds. For the reasons explained more fully below, the motion is **granted**, and Revell is given leave to amend Counts One, Two, and Three of the complaint.

## I. STANDARD

Erickson and the Port Authority filed a joint motion for dismissal.[1]  Revell's complaint can only be dismissed "if it appears to a certainty that no relief could be granted under any set of facts which could be proved." D.P. Enters., Inc. v. Bucks County Cmty. Coll., 725 F.2d 943, 944 (3d Cir. 1984).  Moreover, the court must accept all well-pled factual allegations as true and must construe the complaint in the light most favorable to the plaintiff.  Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc., 140 F.3d 478, 483 (3d Cir. 1998).

## II. FACTUAL BACKGROUND[2]

On March 31, 2005, Revell, a resident of Utah, checked in with Northwest Airlines at the Salt Lake City Airport.  His destination was Allentown, Pennsylvania, via Minneapolis/St. Paul and

---

[1] Technically, because the Port Authority filed a responsive pleading prior to filing this motion and Erickson did not, they have filed for dismissal under different rules of procedure. Fed. R. Civ. P. 12(b)(6) authorizes a defendant to file a pre-answer motion to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(c), on the other hand, permits a defendant who has already filed an answer to file a motion for judgment on the pleadings. As a result, the Port Authority's motion is made pursuant to Rule 12(c), while Erickson's motion is made pursuant to Rule 12(b)(6). The difference is purely semantic, however, because the standard is the same for both rules. Turbe v. Government of the Virgin Islands, 938 F.2d 427, 428 (3d Cir. 1991).

[2] The factual background comes from the complaint.

Newark, New Jersey. When he checked in, Revell declared that his bag contained an unloaded firearm in a locked hard case container and ammunition in a separate locked hard case container. Revell signed an orange firearm declaration tag, which was placed inside the container holding the firearm.

  Revell's flight to Newark was late and he missed his connecting flight to Allentown. After waiting five hours inside the secure area of the airport, he was directed to board a bus that would drive him and other passengers to Allentown. After taking his seat on the bus, Revell learned from the driver that his checked luggage had not been placed on the bus, so he got off to search for his bag. By the time Revell found it in the lost luggage area of Newark Airport, the bus to Allentown had already left. An airline employee told him that the airline's computer system showed that although he had checked the bag through to Allentown, the airline had mistakenly tagged his bag with Newark as its final destination. As there were no other connections to Allentown that night, Revell took his bag and stayed overnight at a nearby hotel.

  The next morning, Revell went directly to Newark Airport. At the airline check-in counter, he once again declared that he had a firearm and ammunition in his bag and that they were stored in separate locked hard case containers. Revell signed a white form and was directed to an x-ray area, where he again declared the firearm and ammunition. After his bag went through the x-ray machine, an agent at the end of the machine opened the cases using Revell's key. The orange firearm declaration from Revell's Salt Lake City check-in was still in the firearm container. After approximately 20 minutes, several police officers escorted Revell to a different area of the airport where they questioned him about the firearm and ammunition. Revell showed them his Utah

concealed firearm permit and driver's license, and explained that he was simply traveling through New Jersey from Utah and that he was on his way to Pennsylvania.

It is unclear exactly when Officer Scott Erickson appeared on the scene, but he ultimately arrested Revell for possession of a handgun without a permit in violation of N.J.S.A. § 2C:39-5(b) and for possession of hollow point ammunition in violation of N.J.S.A. § 2C:39-3(f). Revell's firearm, ammunition, holster, locks, and hard case containers were seized, and he was charged with unlawful possession of a handgun without a permit and unlawful possession of hollow point ammunition. He was handcuffed, placed in a police car, and held overnight in the Port Authority jail. The next day, Revell was transported to the Essex County Jail, where he was detained for three days. Ultimately, some four months later, on August 2, 2005, the Essex County Prosecutor administratively dismissed all charges. As of the date of filing the complaint, the firearm, ammunition, holster, locks, and hard case containers had not been returned.

The complaint includes four counts brought pursuant to 42 U.S.C. § 1983. In Count One, Revell claims that he is entitled to $3 million in damages because Erickson and the Port Authority, acting under color of State law, deprived him of his federal right to transport firearms and ammunition through states where possession of such items might otherwise be illegal, as guaranteed by 18 U.S.C. § 926A. In Count Two, Revell claims that he is entitled to $100,000 in damages because Erickson and the Port Authority, acting under color of State law, deprived him of his property without due process of law as guaranteed by the Fourteenth Amendment to the United States Constitution. In Count Three, Revell seeks injunctive relief in the form of an order directing Erickson and the Port Authority to return his property. In Count Four, the Association seeks an injunction enjoining Erickson and the Port Authority from enforcing N.J.S.A. §§ 2C:39-5(b) and

2C:39-3(f) against its non-resident members who are entitled to transport a firearm and ammunition through New Jersey pursuant to 18 U.S.C. § 926A.

**III.  ANALYSIS**

Revell seeks to recover monetary damages and injunctive relief pursuant to 42 U.S.C. § 1983 for a violation of a statutory right secured by 18 U.S.C. § 926A[3] and for violation of his right to due process as guaranteed by the Fourteenth Amendment to the United States Constitution.  To properly assert a § 1983 claim, the complaint must allege (1) "a violation of a right secured by the Constitution or laws of the United States," and (2) "that the alleged deprivation was committed by a "person" acting under color of State law."  West v. Atkins, 487 U.S. 42, 48 (1988).

**A.  Count One – Does § 1983 provide Revell a remedy for a violation of 18 U.S.C. § 926A?**

It is well-settled that violation of a federal statute by a person acting under color of State law is insufficient, on its own, to support an action under § 1983.  Blessing v. Freestone, 520 U.S. 329, 340 (1997); Golden State Transit Corp. v. City of Los Angeles, 493 U.S. 103, 105-106 (1989).  Such a lawsuit is only permissible if (1) the statute creates enforceable rights, privileges, or immunities; and (2) Congress has not, either expressly or impliedly, foreclosed a private remedy.  Three Rivers Ctr. for Indep. Living v. Hous. Auth., 382 F.3d 412, 421-22 (3d Cir. 2004).  As a threshold jurisdictional matter, the Court must determine whether 18 U.S.C. § 926A created an enforceable personal right.  This appears to be an issue of first impression.

---

[3] Revell's brief in opposition to the motion to dismiss specifies that he is not suing for a violation of his Fourth Amendment right to be free from unreasonable searches and seizures: "Indeed, the Fourth Amendment is not even mentioned in the complaint.  Rather, Revell seeks to recover under 42 U.S.C. Section 1983 for violation of a statutory right secured by 18 U.S.C. § 926A . . . ."  (Pl.'s Br. at 1.)

Whether § 1983 provides a remedy for violation of a federal statute, is a separate, but overlapping, inquiry from whether the statute creates an implied private right of action. Three Rivers Ctr. for Indep. Living, 382 F.3d at 421. The Supreme Court has instructed that four factors must be considered in determining whether a federal statute provides a private right of action:

> First, is the plaintiff one of the class for whose especial benefit the statute was enacted – that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?

Cannon v. University of Chicago, 441 U.S. 677, 689 n.9 (1979) (internal citations and quotations omitted). However, because § 1983 by its very terms provides a private remedy, the analysis for determining whether an individual may sue for violation of a federal statute pursuant to § 1983 is slightly different. Three Rivers Ctr. for Indep. Living, 382 F.3d at 421.

> The threshold question remains, however, whether the federal statute creates a personal right – i.e., a plaintiff must show that the statute creates enforceable rights, privileges, or immunities within the meaning of § 1983. Once the plaintiff establishes the existence of a federal right, there arises a rebuttable presumption that the right is enforceable through the remedy of § 1983. This presumption may be rebutted by showing that Congress specifically foreclosed a remedy under § 1983, either expressly, by forbidding recourse to § 1983 in the statute itself, or impliedly, by creating a comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983.

Id. at 421-22 (internal citations and quotations omitted).

The federal statute involved here, 18 U.S.C. § 926A, states in relevant part:

> Notwithstanding any other provision of any law or any rule or regulation of a State or any political subdivision thereof, any person . . . shall be entitled to transport a firearm for any lawful purpose from any place where he may lawfully possess and carry such firearm to any other place where he may lawfully possess and carry such

>   firearm if, during such transportation the firearm is unloaded, and neither the firearm nor any ammunition being transported is readily accessible or is directly accessible from the passenger compartment of such transporting vehicle: <u>Provided</u>, that in the case of a vehicle without a compartment separate from the driver's compartment the firearm and ammunition shall be contained in a locked container other than the glove compartment or console.

18 U.S.C. § 926A (2006). The statute was enacted in 1986 as part of the Firearms Owners Protection Act ("FOPA") to enable individuals to transport firearms <u>through</u> a State, even if possession of the firearm <u>in</u> that State would otherwise be illegal.

FOPA was a comprehensive statute that attempted to fix perceived problems with the Gun Control Act of 1968. During a debate on the Senate floor over the bill, Senator Bob Dole stated:

>   The Firearms Owners Protection Act would correct various abuses which have occurred under the Gun Control Act of 1968. The 1968 law was passed during an emotional period, when the Nation was reacting to two political assassinations. The national judgment at that time was to take away rights enjoyed by many in order to prevent a recurrence of the outrageous abuses of a few. Each year's experience under the law brought with it new evidence that Congress had gone too far. Hunters, [s]portsmen, hobbyists, and collectors were being prosecuted for technical violations, diverting limited law enforcement resources from the pursuit of those guilty of truly criminal firearms use.
>   S. 49 [FOPA] is the culmination of 7 years of painstaking debate and analysis over the deficiencies in the 1968 law and how they can be best corrected.

132 Cong. Rec. S5358-04 (daily ed. May 6, 1986).

When the bill was first circulated, FOPA caused serious concern among the law enforcement community. Had FOPA been passed in its original form, the "legislation would [have] exempt[ed] the transport of firearms in interstate commerce from any State or local laws that might otherwise make such transport illegal, thereby overriding States' rights to regulate gun carrying across their borders, and allowing criminals the opportunity to transport their weapons across State lines with impunity." Id. (statement of Sen. Daniel Patrick Moynihan). To allay these concerns, Senator Strom

Thurmond proposed the statute that was ultimately passed, known colloquially as both the "Thurmond Amendment" and "Son of Gun." The new language closed the loophole by limiting the right to travel interstate with firearms to situations where the firearm was unloaded, the firearm was not readily accessible, and any ammunition was stored separately.

During debate, Senator Jim McClure discussed the need for law abiding individuals to travel interstate with their firearms:

> I believe that the Second Amendment means exactly what it says. I believe that our forefathers intended for all honest citizens to be able to arm themselves. This is not a privilege meted out by the Government – it is a sovereign right, belonging to the people themselves. . . . Under present law, there is no legal way for a person to transport firearms through some States. For example, a hunter from South Carolina has no way of getting through the State of New York to go moose hunting in Maine. The Firearm Owners Protection Act would allow an individual to transport a firearm through the State if the firearm is unloaded and not easily accessible. The possession of the firearm must be legal both in the State of residence and in the State of final destination. . . . This <u>right of transportation</u> does not hinder a State from enacting laws concerning intrastate transportation. . . . Each year thousands of law abiding citizens travel on interstate trips with firearms for hunting purposes, competitions, matches, moving residences, and personal protection upon arrival. There must be some way for law-abiding Americans <u>to exercise the right to interstate travel with personally owned firearms</u>.

132 Cong. Rec. S5358-04 (daily ed. May 6, 1986) (emphases added). Speaking out in favor of the proposed bill on the House floor, Representative Bill McCollum described § 926A as a "safe harbor" provision, rather than as a statute creating an affirmative right. 132 Cong. Rec. H4102-03 (daily ed. June 24, 1986). He noted:

> No one is required to follow the procedures set forth in section 926A, but any traveler who does cannot be convicted of violating a more restrictive State or local law in any jurisdiction through which he travels. Thus, section 926A will be valuable to the person who either knows he will be traveling through a jurisdiction with restrictive laws or is unfamiliar with the various laws of the jurisdiction he will be traversing.

> Many times people traveling in interstate commerce can unwittingly find themselves in violation of all kinds of technical requirements for possession of firearms.

Id.

The legislative history shows that the statute was passed as a compromise that balanced the needs of certain individuals to travel across state lines with firearms with the needs of States to keep illegal guns out of the hands of criminals. Effectively, Congress passed a statute, codified as § 926A, that trumps State gun laws under limited circumstances, but that does not preempt all State regulation of firearms, City of Camden v. Beretta U.S.A. Corp., 81 F. Supp. 2d 541, 549 (D.N.J. 2000) (Simandle, J.), leaving the States with the power to regulate firearms and to prosecute individuals who violate State gun laws. Section 926A, therefore, places police officers in the unenviable position of having to determine in the first instance whether an individual should be arrested for violation of a State gun law, or whether the individual's actions are immunized by compliance with § 926A.

Revell's lawsuit presents a situation where an individual has complied with the requirements of § 926A and is nonetheless arrested for violation of an otherwise valid State gun law. Arguably, there is a violation of § 926A if he has complied with § 926A and is nonetheless detained by the police and/or arrested, and/or if the firearms are seized. But the § 926A violation is a subsection of the main event: seizures that are arguably "unreasonable" have occurred, and this necessarily directs a Fourth Amendment analysis to determine if he was stripped of "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."

Revell seeks a statutory route toward relief, but inescapably, the legal inquiry draws on established legal principles of constitutional law enforcement activity. Thus: "[A] warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe

that a criminal offense has been or is being committed." Devenpeck v. Alford, 543 U.S. 146, 152 (2004) (citing United States v. Watson, 423 U.S. 411, 417-24 (1976); Brinegar v. United States, 338 U.S. 160, 175-76 (1949)).  If a law enforcement officer arrests an individual without probable cause, the officer may be liable under § 1983.  Atwater v. City of Lago Vista, 532 U.S. 318 (2001). Furthermore, the filing of criminal charges against an individual without probable cause is also actionable under § 1983.  Lohman v. Twp. of Oxford, 816 F. Supp. 1025 (E.D. Pa. 1993).

      The Supreme Court has specifically held that all § 1983 claims alleging an unlawful seizure must be brought pursuant to the Fourth Amendment.  Graham v. Connor, 490 U.S. 386, 395 (1989) (holding that "[b]ecause the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment . . . must be the guide for analyzing these claims").  While the FOPA provision at issue in this case might be properly considered as a factor weighing on reasonableness, it does not provide greater protection from arrest than the Fourth Amendment already provides, nor under the strictures of Graham v. O'Connor, may it substitute for Fourth Amendment analysis.

      By passing § 926A, Congress was attempting to protect law abiding gun owners from prosecution without diluting the States' abilities to prosecute criminals using guns for illicit purposes.  Because individuals already have a method of recovering damages pursuant to § 1983 if they are arrested or charged without probable cause, it is unnecessary and, indeed, improper for this Court to conclude that § 1983 provides a separate or alternative remedy for a violation of § 926A. Subjecting law enforcement officers to § 1983 liability for unlawful arrests over and above the Fourth Amendment's reasonableness inquiry risks an impact on the enforcement of a given State's

gun laws, something that motivated Congress's insistence on the Thurmond Amendment in the first place.

Revell carefully drafted his complaint to avoid mention of the Fourth Amendment, and specifically points out in his brief that he is <u>not</u> raising a Fourth Amendment claim. But he is seeking to recover damages for the unconstitutional seizure of his person and his firearm under circumstances that require a classic reasonableness analysis. Nothing in the statute or legislative history would support a finding by this Court that by passing the FOPA provision at issue, Congress intended to provide firearms-transporting individuals with separate protection against arrest and seizure of property from what the Fourth Amendment already provides. Therefore, Count One of Revell's complaint is **dismissed**.

Because, as the foregoing analysis indicates, the facts alleged could be sufficient to state a § 1983 claim for an unreasonable arrest and seizure of property in violation of the Fourth Amendment, Revell is granted 20 days leave to file an amended complaint.

## B. Counts Two and Three – Due Process Claims

In Counts Two and Three, Revell claims that defendants, acting under color of State law, have deprived him of his property (firearm, ammunition, holster, locks, and hard case containers), without due process of law as guaranteed by the Fourteenth Amendment to the United States Constitution. The complaint states: "Defendants . . . deprived Revell of property without due process of law by retaining, without notice and opportunity for a hearing, the firearm, holster, locks, hard case containers, and ammunition seized from him." (Compl. at ¶¶ 36, 43.) Both counts are brought pursuant to § 1983, the only difference being that Revell seeks monetary damages in Count Two and injunctive relief in Count Three.

The most natural reading of the complaint is that Revell is asserting a procedural due process claim based on defendants' failure to return his firearm, ammunition, holster, locks, and hard case containers to him. However, because Revell does not explicitly state whether his due process claim is of the procedural or substantive variety, the Court will analyze his claim as if he has asserted both.

**1. Procedural Due Process**

Under the Fourteenth Amendment, a State may not "deprive any person of life, liberty, or property, without due process of law." A procedural due process claim is analyzed under a two-part inquiry: the Court must determine whether Revell "was deprived of a protected interest, and if so, what process was his due." Logan v. Zimmerman Brush Co., 455 U.S. 422, 428 (1982). The second prong bars a § 1983 suit if a constitutionally adequate State process was available but not used. Parratt v. Taylor, 451 U.S. 527, 541-42 (1981).

The Supreme Court explained in Board of Regents v. Roth, 408 U.S. 564, 577 (1972), that property interests "are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law . . . ." It is not disputed that Revell enjoyed a property interest in items seized and subsequently retained by defendants, so the issue is what process he was due.

"Usually, the process that is constitutionally 'due' must be afforded before the deprivation occurs – the state must provide predeprivation process." Brown v. Muhlenberg Twp., 269 F.3d 205, 213 (3d Cir. 2001). However, when deprivation by a State official acting under color of law is "random and unauthorized" or if the necessity of quick action makes a predeprivation remedy impracticable, as is the case here, the Due Process Clause requires only that States provide an adequate postdeprivation remedy. Parratt, 451 U.S. at 539-41. In cases of random or unauthorized

deprivations, the availability of a State law tort action against the rogue State officer in State court qualifies as an adequate postdeprivation remedy. Id. at 543.

While Revell has alleged that the Port Authority has a policy of arresting individuals in violation of 18 U.S.C. § 926A (Compl. at ¶ 17), he has not alleged that the Port Authority's postdeprivation remedies to recover a firearm seized during the course of an arrest are constitutionally inadequate. Revell also does not indicate whether or not he has availed himself of the Port Authority's remedies for the recovery of seized property or why these remedies are constitutionally inadequate. He simply claims that his "requests for return of the property have been ignored." (Compl. at ¶ 22.) To the extent that Revell has not availed himself of the Port Authority's formal procedures for requesting the return of seized property, his procedural due process claim must be dismissed for failure to state a claim because he has not shown that complying with the procedures would be futile. Insofar as Revell claims that Erickson's retention of his property is a random and unauthorized act and that Erickson is wrongly holding his property in violation of official Port Authority policy, this claim must also be dismissed because Revell is capable of filing a State law tort action against Erickson in State court seeking the return of his property. Parratt, 451 U.S. at 543 (holding that in cases of random and unauthorized deprivations, the availability of a State law tort action in State court qualifies as an adequate postdeprivation remedy).

**2. Substantive Due Process**

To the extent that Revell is claiming that his arrest and the seizure of his property should be analyzed under a substantive due process standard, such a claim is foreclosed by the Supreme Court's decision in Graham v. Connor, 490 U.S. 386, 388 (1989). As noted above, the Graham Court held that "[b]ecause the Fourth Amendment provides an explicit textual source of

constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." Id. at 395.

For the foregoing reasons, Counts Two and Three are **dismissed** for failure to state a claim. Revell is granted leave to file an amended complaint within 20 days if he wishes to pursue a claim alleging that the Port Authority's postdeprivation remedies for the return of seized property are constitutionally inadequate.

**C.  Count Four - Injunctive Relief for the Association**

In Count Four, the Association seeks an injunction enjoining defendants from enforcing N.J.S.A. §§ 2C:39-5(b) (possession of a handgun without a permit ) and 2C:39-3(f) (possession of hollow point ammunition) against its non-resident members who are entitled to transport a firearm and ammunition through New Jersey pursuant to 18 U.S.C. § 926A.

Defendants have not raised any arguments in support of dismissing this claim.  However,

> those who seek to invoke the jurisdiction of the federal courts must satisfy the threshold requirement imposed by Art. III of the Constitution by alleging an actual case or controversy.  Plaintiffs must demonstrate a personal stake in the outcome in order to assure that concrete adverseness which sharpens the presentation of issues necessary for proper resolution of constitutional questions.  Abstract injury is not enough.  The plaintiff must show that he has sustained or is immediately in danger of sustaining some direct injury as the result of challenged official conduct and the injury or threat of injury must be both real and immediate, not conjectural or hypothetical.

City of Los Angeles v. Lyons, 461 U.S. 95, 101-102 (1983) (internal citations and quotations omitted).

In Lyons, the Court held that an individual who was severely injured by the police after they subjected him to a choke hold during a traffic stop did not have standing to seek an injunction

preventing the police from using the choke hold in the future. <u>Id.</u> at 105. In so holding, the Court stated that although

> Lyons may have been illegally choked by the police on October 6, 1976, while presumably affording Lyons standing to claim damages against the individual officers and perhaps against the City, does nothing to establish a real and immediate threat that he would again be stopped for a traffic violation, or for any other offense, by an officer or officers who would illegally choke him into unconsciousness without any provocation or resistance on his part. The additional allegation in the complaint that the police in Los Angeles routinely apply chokeholds in situations where they are not threatened by the use of deadly force falls far short of the allegations that would be necessary to establish a case or controversy between the parties.

<u>Id.</u>

Under this standard, the Association does not meet Article III's injury in fact requirement to establish an actual case or controversy. Although the complaint summarily asserts that there "exists a credible threat of prosecution for violation . . . [of these laws] for non-resident members of the Association who intend to transport firearms and hollow point ammunition through New Jersey" pursuant to 18 U.S.C. § 926A," (Compl. at ¶ 52), the Association has failed to plead any fact in support. Because the Association cannot show a sufficient likelihood that its members will be injured in the future, its claim must be **dismissed** for failure to establish a case or controversy between the parties. <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555 (1992); <u>Lyons</u>, 461 U.S. at 105.

## IV.   CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is **granted**. Revell is granted leave to amend **Count One** to substitute a § 1983 claim for a violation of his Fourth Amendment rights in place of his § 1983 claim for a violation of 18 U.S.C. § 926A; and Revell is also granted leave to amend his complaint as to **Counts Two** and **Three** insofar as he wishes to claim that the Port

Authority's postdeprivation remedies for property seized in connection with his arrest are constitutionally inadequate.  An appropriate order will be filed.


Dated:  June 29, 2007                              /s/ Katharine S. Hayden
                                                                   Katharine S. Hayden, U.S.D.J.