UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| GREGG C. REVELL,<br>  Plaintiff,<br>v. | Civ. Action No. 06-0402 (KSH) |
| THE PORT AUTHORITY OF NEW YORK AND NEW JERSEY and SCOTT ERICKSON,<br>  Defendants and Third-Party Plaintiff<br>v. | **OPINION** |
| CONTINENTAL AIRLINES, THE COUNTY OF ESSEX, THE ESSEX COUNTY JAIL, THE OFFICE OF THE ESSEX COUNTY PROSECUTOR et al.<br>  Third-Party Defendants. | |

**Katharine S. Hayden, U.S.D.J.**

This action arises from the arrest and subsequent detention of plaintiff Gregg C. Revell at Newark Liberty Airport ("Newark Airport") on April 1, 2005. The following motions are before the Court in this matter. Defendants Port Authority of New York and New Jersey ("Port Authority") and Police Officer Scott Erickson ("Erickson") (collectively, "Port Authority defendants") have moved for summary judgment dismissing the complaint against them. (D.E. 93.) Third-Party Defendants, the County of Essex and the Essex County Prosecutor's Office (collectively, "Essex County"), have moved to dismiss in lieu of answering the third-party complaint asserted against them by Third-Party Plaintiffs Port Authority and Erickson. (D.E. 92.) Third-Party Defendant Continental Airlines ("Continental") has moved for summary

1

judgment of dismissal as to the Port Authority's third-party complaint against it. (D.E. 97, 106.)

In this opinion, the Court addresses all pending motions.

## I.     FACTUAL BACKGROUND

Because the relevant facts were stated in an earlier decision, and are essential to understanding Revell's claims, they are recited here.

> On March 31, 2005, Revell, a resident of Utah, checked in with Northwest Airlines at the Salt Lake City Airport. His destination was Allentown, Pennsylvania, via Minneapolis/St. Paul and Newark, New Jersey. When he checked in, Revell declared that his bag contained an unloaded firearm in a locked hard case container and ammunition in a separate locked hard case container. Revell signed an orange firearm declaration tag, which was placed inside the container holding the firearm.
> Revell's flight to Newark was late and he missed his connecting flight to Allentown. After waiting five hours inside the secure area of the airport, he was directed to board a bus that would drive him and other passengers to Allentown. After taking his seat on the bus, Revell learned from the driver that his checked luggage had not been placed on the bus, so he got off to search for his bag. By the time Revell found it in the lost luggage area of Newark Airport, the bus to Allentown had already left. An airline employee told him that the airline's computer system showed that although he had checked the bag through to Allentown, the airline had mistakenly tagged his bag with Newark as its final destination. As there were no other connections to Allentown that night, Revell took his bag and stayed overnight at a nearby hotel.
> The next morning, Revell went directly to Newark Airport. At the airline check-in counter, he once again declared that he had a firearm and ammunition in his bag and that they were stored in separate locked hard case containers. Revell signed a white form and was directed to an x-ray area, where he again declared the firearm and ammunition. After his bag went through the x-ray machine, an agent at the end of the machine opened the cases using Revell's key. The orange firearm declaration from Revell's Salt Lake City check-in was still in the firearm container. After approximately 20 minutes, several police officers escorted Revell to a different area of the airport where they questioned him about the firearm and ammunition. Revell showed them his Utah concealed firearm permit and driver's license, and explained that he was simply traveling through New Jersey from Utah and that he was on his way to Pennsylvania.
> It is unclear exactly when Officer Scott Erickson appeared on the scene, but he ultimately arrested Revell for possession of a handgun without a permit in violation of N.J.S.A. § 2C:39-5(b) and for possession of hollow point ammunition in violation of N.J.S.A. § 2C:39-3(f). Revell's firearm, ammunition, holster, locks, and hard case containers were seized, and he was charged with unlawful possession of a handgun without a permit and unlawful possession of hollow

>point ammunition. He was handcuffed, placed in a police car, and held overnight in the Port Authority jail. The next day, Revell was transported to the Essex County Jail, where he was detained for three days. Ultimately, some four months later, on August 2, 2005, the Essex County Prosecutor administratively dismissed all charges. As of the date of filing the complaint, the firearm, ammunition, holster, locks, and hard case containers had not been returned.

(Op. dated June 29, 2007 (D.E. 38)).  On June 29, 2007, the Court granted Port Authority defendants' motion to dismiss Count One of Revell's original complaint, which sought to recover monetary damages and injunctive relief pursuant to 42 U.S.C. § 1983 for a violation of a statutory right secured by 18 U.S.C. § 926A, concluding that § 926A did not create a private right of action.  (D.E. 38.)  At the same time, the Court permitted Revell to amend his complaint "to state a § 1983 claim for an unreasonable arrest and seizure of property in violation of the Fourth Amendment."  (D.E. 38.)  The Court also dismissed Counts Two and Three, which claimed that defendants, acting under color of State law, had deprived him of his property (firearm, ammunition, holster, locks, and hard case containers), without due process of law as guaranteed by the Fourteenth Amendment and sought redress in the form of monetary relief (Count Two) and injunctive relief (Count Three).  (D.E. 38.)  The Court granted leave for Revell to reframe these counts as "a claim alleging that the Port Authority's post-deprivation remedies for the return of seized property are constitutionally inadequate."  (D.E. 38.)  The Court also dismissed Count Four, which had been brought by the Association of New Jersey Rifle and Pistol Clubs, Inc. (the "Association"), finding that the Association's claim to enjoin defendants from enforcing N.J.S.A. §§ 2C:39-5(b) (possession of a handgun without a permit ) and 2C:39-3(f) (possession of hollow point ammunition) against its non-resident members transporting a firearm and ammunition through New Jersey pursuant to 18 U.S.C. § 926A "d[id] not meet Article III's injury in fact requirement to establish an actual case or controversy."  (D.E. 38.)  On

September 7, 2007, the Association filed a notice of appeal of its dismissal as a plaintiff. (D.E. 64.)

Revell timely filed an amended complaint, recasting Claims One, Two and Three as permitted by the Court, and the Association dropped Claim Four, as ordered. (D.E. 46.) In the amended complaint, Count One asserts a § 1983 claim for damages pursuant under the Fourth Amendment. Count Two pleads a claim for damages, alleging that Port Authority deprived Revell of his property without due process of law. Count Three, which Revell has since voluntarily dismissed,[1] sought injunctive relief for the same alleged due process violations. In the new complaint, Revell supplements paragraph 12 of his original complaint regarding his transportation to the airport Sheraton (corresponds to ¶ 11 in the amended complaint), as follows:

> His bags (including both locked hard case containers) were placed in the rear, baggage area of the van by the driver of the hotel shuttle van. The bags were not readily or directly accessible from the passenger compartment of the hotel shuttle van as there were two seats between him and the bags and he would have had to climb over the rear seat to get to the bags.

(Am. Compl. ¶ 11.)

A final pretrial order was entered on September 28, 2007. (D.E. 70.) Essex County filed its motion to dismiss in lieu of answering on June 11, 2008, followed by Port Authority defendants' cross-motion for summary judgment on June 13, 2008. Continental thereafter moved on August 8, 2008 for summary judgment as to the third-party complaint.[2]

## II.   STANDARD OF REVIEW

Port Authority defendants' motion, as well as Continental's motion, are made pursuant to Rule 56(c), Fed. R. Civ. P. Summary judgment may be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any

---

[1] Revell advised the Court on July 24, 2008 that the Port Authority returned his property. (D.E. 101.)
[2] A third-party action was brought by Port Authority against Essex County and Continental, essentially alleging that Continental's malfeasance was the proximate cause of any injury to Revell. (D.E. 55.)

material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The Court must "view the facts in the light most favorable to the non-moving party and [must] draw all inferences in that party's favor." *Gray v. York Newspapers*, 957 F.2d 1070, 1080 (3d Cir. 1992). Summary judgment is inappropriate if there is evidence sufficient to allow a reasonable jury to return a verdict for the non-moving party, *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), or if the factual dispute is one which might affect the outcome of the suit under the governing law . . . ." *Id.* The movant's burden, however, "may be discharged by 'showing' . . . that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Additionally, the non-movant "may not rest upon mere allegations or denials of the . . . pleading"; instead, the non-movant, "by affidavits or as otherwise provided in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." *Matushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Here, the facts necessary to the determination of the pending motions for summary judgment are not in dispute.

Essex County's motion is made in lieu of an answer, and although Essex County does not set forth a standard in its papers, the grounds it cites for dismissal comport with a motion made pursuant to Rule 12(b)(6), Fed. R. Civ. P. The bases for dismissal advanced by Essex County include that the Port Authority has no right of contribution on a § 1983 action, that the Eleventh Amendment and absolute immunity bar monetary claims against Essex County Prosecutor's Office, and that no Eighth Amendment claim is properly pled. None of these arguments require the Court to look further than the pleadings, and, accordingly, the Court will treat Essex County's motion as being made under Rule 12(b)(6).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege facts that raise a right to relief above the speculative level. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). Although a court must accept as true all allegations in the complaint and view them in the light most favorable to the plaintiff, *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008), the court need not accept sweeping legal conclusions that are framed as factual allegations, unwarranted inferences, or unsupported conclusions. *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). A plaintiff must allege sufficient facts to show that the legal allegations are not just possible, but also are plausible. *Phillips*, 515 F.3d at 234. According to the Third Circuit, Rule 12(b)(6) "requires not merely a short and plain statement, but instead mandates a statement showing that the pleader is entitled to relief," meaning "there must be some showing sufficient to justify moving the case beyond the pleadings to the next stage of litigation." *Id.* at 234-35.

## III.   ANALYSIS

### A. Probable Cause

Port Authority defendants' principal arguments are that Revell's § 1983 claim must be dismissed because there was probable cause for Revell's arrest, and, in any event, that Erickson is protected by qualified immunity because his actions were objectively reasonable.

Port Authority defendants' "motion is based on the probable cause [issue] for the arrest of Mr. Revell in light of the facts and circumstances presented to the arresting police officers who questioned Mr. Revell regarding his authority to possess and carry the hand gun in his luggage." (Port Auth. Br. 1.) Revell agrees with the centrality of probable cause, stating "the issue for this motion is whether Defendants had probable cause to arrest Revell." (Revell Br. 6.)

Revell's complaint alleges that he "was entitled to transport a firearm and ammunition through New Jersey, notwithstanding N.J.S. § 2C:39-5(b) and N.J.S. § 2C:39-3(f)" because his travel was protected under 18 U.S.C. § 926A. (Am. Compl. ¶¶ 29-30.) Revell alleges that his arrest and the seizure of his property at Newark Airport were unreasonable, thereby violating the Fourth and Fourteenth Amendments to the U.S. Constitution.

The statute upon which Revell relies, 18 U.S.C. § 926A, provides:

> Notwithstanding any other provision of any law or any rule or regulation of a State or any political subdivision thereof, any person who is not otherwise prohibited by this chapter [18 USC §§ 921 *et seq.*] from transporting, shipping, or receiving a firearm shall be entitled to transport a firearm for any lawful purpose from any place where he may lawfully possess and carry such firearm to any other place where he may lawfully possess and carry such firearm if, during such transportation the firearm is unloaded, and neither the firearm nor any ammunition being transported is readily accessible or is directly accessible from the passenger compartment of such transporting vehicle: Provided, That in the case of a vehicle without a compartment separate from the driver's compartment the firearm or ammunition shall be contained in a locked container other than the glove compartment or console.

18 U.S.C. § 926A.

Revell argues that § 926A shielded him from criminal liability under N.J.S. § 2C:39-5(b) for possession of an unlicensed handgun, which provides in pertinent part: "Any person who knowingly has in his possession any handgun . . . without first having obtained a permit to carry the same as provided in N.J.S. 2C:58-4, is guilty of a crime[.]" Revell likewise argues that § 926A insulates his possession of hollow nose ammunition from prosecution under N.J.S. § 2C:39-3(f), which provides: "Any person, other than a law enforcement officer or persons engaged in activities pursuant to subsection f. of N.J.S. 2C:39-6, who knowingly has in his possession any hollow nose or dum-dum bullet . . . is guilty of a crime[.]" As the parties have correctly posited, *see supra*, the Court must determine whether Officer Erickson had probable

cause to arrest Revell based upon the information known to Erickson during their encounter at Newark Airport.[3]

"Probable cause exists where the facts and circumstances within the arresting officer's knowledge are sufficient to warrant a reasonable person to believe an offense had been committed [by the suspect in question]." *United States v. Goode*, 2009 U.S. App. LEXIS 2471, *8 (3d Cir. Feb. 9, 2009) (quoting *United States v. McGlory*, 968 F.2d 309, 342 (3d Cir. 1992)). "[P]robable cause is a fluid concept -- turning on the assessment of probabilities in particular factual contexts -- not readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. 213, 232 (1983). Probable cause is a "common-sense standard" wherein the belief of a "man of reasonable caution . . . does not demand any showing that such a belief be correct or more likely true than false." *Texas v. Brown*, 460 U.S. 730, 742 (1983). As is the case here, where "facts are not in dispute, the presence or absence of 'probable cause' has long been acknowledged to be a question of law." *Wyatt v. Cole*, 504 U.S. 158, 178 (1992).

Port Authority defendants contend that, with regard to the facts known by Erickson, probable cause existed for Revell's arrest for illegally possessing a .45 caliber handgun and hollow-nose bullets in violation of New Jersey law. Port Authority defendants submit that the indicia leading Erickson to a determination of probable cause included: Revell's failure to respond to questions regarding the legality of Revell carrying a handgun in Pennsylvania (his final destination); the overnight break in Revell's airline travel during which his luggage was

---

[3] Given the nature of the police encounter—in which Revell was passing through a security checkpoint in an airport—Revell cannot contend that Erickson should not have stopped him or that Erickson's questioning of him offends the Fourth Amendment. *See Terry v. Ohio*, 392 U.S. 1, 19 n. 16 (1968) (noting that police officers may investigate without offending the Fourth Amendment); *see also United States v. Hartwell*, 436 F.3d 174, 179 (3d Cir. 2006) (quoting *Singleton v. Comm'r*, 606 F.2d 50, 52 (3d Cir. 1979) ("The government unquestionably has the most compelling reasons[--]the safety of hundreds of lives and millions of dollars worth of private property[--]for subjecting airline passengers to a search for weapons or explosives that could be used to hijack an airplane.")).

accessible to him at the Sheraton hotel; and Revell's statement that he planned to use the handgun for "personal protection" while traveling.

The Port Authority defendants' most persuasive argument that Erickson had probable cause to arrest Revell is that Erickson grew suspicious that Revell's conduct fell outside of the protective ambit of 18 U.S.C. § 926A because he left the airport with the luggage for an overnight stay at a Newark hotel. The record supports defendants' assertion that Erickson was concerned that Revell had ready access to the firearm and ammunition during the preceding night, which meant Revell would be in violation of at least two New Jersey Statutes. From Erickson's deposition testimony it is clear he knew that Revell spent the night with his luggage (containing the handgun and ammunition) in a Newark hotel.

> Q. He told you that he picked up the bag at Newark because he missed his flight, and went of the airport, correct?
> A. Yes.
> Q. And did he tell you that he went to a hotel that night?
> A. Yes.

(Erickson Dep. Trans. 65:13-20.) Erickson testified that he believed he had probable cause notwithstanding § 926A due to Revell's possession of hollow-nose ammunition: "The fact that he had the hollow-nosed bullets, and the circumstances that he had, we had to believe that he had the weapon readily available to him, you know, overnight in the hotel. All of these circumstances lead us to believe we have enough probable cause." (Erickson Dep. Trans. 72:15-22.)

Revell's arguments on this point attempt to reframe the dispute into whether Erickson knew "what, if anything, Revell did with his bag when he went to the hotel." (Revell Br. 17.) Revell counters that his pleadings indicate that he "did not open either of the locked hard case containers while he was in New Jersey" (*id.* (quoting Am. Compl. ¶ 13)), and, argues that

9

Erickson had "no basis to conclude that Revell's firearm was 'readily accessible' to him." (*Id.*) Revell chooses to focus on Erickson's questions as to where Revell intended to use the handgun for protection, arguing that the correct answers would not have suggested the handgun was readily accessible during the trip to New Jersey. But this ignores the fact that the handgun *was* accessible to Revell from the time he left Newark Airport after the cancellation of his flight to the time he returned the next day. Revell's unsupported assertion that he did not open the gun or ammunition containers in New Jersey is irrelevant to whether Erickson had probable cause to suspect the weapon and bullets were readily accessible. Moreover, nothing in the pleadings or the record indicates that Revell's handgun and ammunition were anything but readily accessible to him during his overnight stay in New Jersey. Revell does not allege, for instance, that the keys to his locked hard cases were held by Port Authority Police, or that the cases were held in safekeeping by TSA or Port Authority officials overnight.

In addition, Erickson was not constrained to believe Revell's responses to his questions during their airport encounter, especially because Revell's responses did not satisfy Erickson's suspicion as to whether laws had been violated. In *Torraco v. Port Authority of New York & New Jersey*, 539 F.Supp. 2d 632 (E.D.N.Y. 2008), the court considered questioning by an airport police officer of an individual transporting a handgun who claimed the protection of § 926A. The court concluded that "[a] reasonable officer, even one aware of *§926A*, would be fully justified in not accepting plaintiff's explanation at face value. This is because *§926A* itself does not answer the question; it requires confirmation of a particular set of facts, which a police officer is not obligated to accept from the mouth of the suspect." *Id.* at 650.

Moreover, § 926A does not address anything but vehicular travel; it does not encompass keeping the weapon—locked in a case or not—in an airport hotel overnight. For that reason,

Revell's amendment to his complaint wherein he asserts that his encased handgun and ammunition were transported from Newark Airport to the Sheraton in a van's inaccessible cargo area is without force for purposes of the probable cause analysis. It may very well be that Revell could not access his luggage during his ride in the shuttle van—but he assuredly could have later, when it was with him during his hotel stay.

Revell also attempts to draw on inapposite Supreme Court precedent arising from enforcement of the Civil Rights Act of 1964 to show that his stay at the hotel did not constitute a "break in travel." To support his point, Revell cites *Atlanta Motel v. United States*, 379 U.S. 241 (1964), which stands for the proposition that a hotel can be regulated as part of interstate commerce under the Commerce Clause. To apply the *Atlanta Motel* precedent to the § 926A framework, as Revell suggests, would stretch § 926 too thin. Section 926A plainly discusses the transportation of firearms through a state; it does not contemplate a firearm transporter staying for any period of time in a state with an unlicensed firearm in luggage within that transporter's unsupervised possession.

Even if Erickson's understanding of any of the facts was mistaken, however, the probable cause he developed to arrest Revell is not diminished, as "[p]robable cause does not demand any showing that a good-faith belief be correct, or more likely true than false." *Torraco*, 539 F. Supp. 2d at 647.

The Court finds as a matter of law that Port Authority defendants' arrest of Revell does not offend the Fourth Amendment because probable cause developed during the arresting officer's questioning concerning Revell's transportation of a handgun and ammunition through New Jersey. This ruling makes it unnecessary for the Court to address whether or not §926A pre-empts New Jersey's ban on possession of hollow point bullets.

### B. Qualified Immunity

The Port Authority defendants also argue that Erickson is entitled to qualified immunity as a matter of law in arresting Revell because his actions did not offend the Constitution and were not objectively unreasonable. Although the Court has determined probable cause existed to arrest Revell, the question of qualified immunity will also be determined as an alternative ground for the Court's decision.

"[A]ny claim of qualified immunity must be resolved at the earliest possible stage of litigation." *Miller v. Clinton County*, 544 F.3d 542, 547 (3d Cir. 2008). Under the doctrine of qualified immunity, officers performing discretionary functions are "shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity analysis is a two-pronged test. A court must first ask whether the facts alleged, viewed in the light most favorable to the party asserting the injury, show that the officer's conduct violated a constitutional right? *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Then, *only* if the court answers the threshold question affirmatively should it proceed to the second prong and determine whether the right was clearly established, *i.e.*, "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* Thus, the Court must first determine whether a constitutional infringement has been satisfactorily alleged to create a genuine issue of material fact.

The Port Authority defendants "are entitled to qualified immunity here if a reasonable officer could have believed that probable cause existed to arrest [defendant] in light of clearly established law and the information the arresting officers possessed." *Blaylock v. City of Philadelphia*, 504 F.3d 405, 411 (3d Cir. 2007) (internal citation and quotation omitted). Here,

Erickson demonstrated awareness of the clearly established New Jersey statutes prohibiting unlicensed handguns and hollow-nose ammunition during the airport encounter. Further, although Erickson did not possess full information about Revell's planned driving route from Pennsylvania to Utah (*i.e.* the states through which Revell planned to drive), Erickson did learn of Revell's plans to use the gun for "protection" and that Revell had left the airport on the previous night with the unlicensed handgun and ammunition. Because, "in a qualified immunity case, the question of probable cause to arrest is an objective inquiry that does not depend on the officers' subjective motivations," the inquiry can end there. *See Blaylock*, 504 F.3d at 411 n.5. Thus, by virtue of Erickson having probable cause to arrest Revell, Erickson is entitled to qualified immunity and the Court need not reach the second prong.

### *C. Due Process Claim Against Port Authority Under § 1983*

Count Two of the amended complaint addresses the adequacy of the Port Authority's post-deprivation due process, seeking damages for "depriv[ing] Revell of property without due process of law pursuant to the established policy of Defendant Port Authority[.]" (Am. Compl. ¶ 39.) Thus, Revell is seeking damages for the taking of his property during the arrest and failing to return it. In his amended complaint, Revell had also sought injunctive relief ordering that his seized property be returned to him, but voluntarily dismissed Count Three for injunctive relief on July 24, 2008 after Port Authority returned his gun, ammunition, and holster. (D.E. 101.)

That the seizure of Revell's weapon, ammunition, and holster took place in the context of an arrest means that Revell is entitled to post-deprivation procedures to satisfy due process. Where, as here, the necessity of quick action makes a pre-deprivation remedy impracticable, the Due Process Clause requires only that States provide an adequate post-deprivation remedy. *Parratt v. Taylor*, 451 U.S. 527, 539-41 (1981). As the Court previously ruled in its June 29,

2007 opinion, in cases of random or unauthorized deprivations, the availability of a State law tort action against the rogue State officer in State court qualifies as an adequate post-deprivation remedy. (D.E. 38); *see also Parratt*, 451 U.S. at 543.

Revell argues that the option of requesting that Essex County release his property was not an adequate post-deprivation remedy because it was not a statutorily-created means of redress. (Revell Br. 28.) Interestingly, it appears that such a simple request to Essex County is precisely what led to the return of Revell's seized property. Critically for purposes of Count Two, however, Revell did not file a state court tort suit for return of his seized property. Revell cannot recover for inadequacy of post-deprivation remedies because the option of commencing a state court lawsuit was available to him at all times, which satisfies Revell's right to due process. Accordingly, the Court grants summary judgment of dismissal as to Count Two.

### D. "Prison Claim"

Revell clarifies in his papers that he is not alleging a "prison claim" under the Eighth Amendment, but only seeks to "recover against the Port Authority for injuries suffered at the Essex County Jail as part of his compensation for the arrest." (Revell Br. 32.) Without commenting on the availability of damages on this theory, the Court has found that probable cause existed for Revell's arrest. As such, he is not entitled for damages related to his detention at Essex County Jail.

### E. The Remaining Motions

Because the Court grants Port Authority defendants' motion for summary judgment, it need not decide third-party defendant Essex County's motion to dismiss in lieu of answering and third-party defendant Continental's motion for summary judgment, and they are both denied as moot. All third-party claims are dismissed as moot.

## IV. CONCLUSION

For the foregoing reasons, Count One of Revell's complaint is dismissed because probable cause existed for Revell's arrest. Revell's only remaining claim, Count Two, is likewise dismissed because New Jersey afforded adequate post-deprivation due process to Revell. The motions of Essex County and Continental are denied as moot, as there is no liability for the actions of the Port Authority defendants, and all third-party claims are, accordingly, dismissed. An appropriate order will be entered.

/s/Katharine S. Hayden
Katharine S. Hayden, U.S.D.J.