IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

---

| | |
|---|---|
| ASSOCIATION OF NEW JERSEY ) | |
| RIFLE & PISTOL CLUBS, INC. ) | |
| ) | |
|     Plaintiff ) | |
| ) | |
|       v. ) | No. 06-402-KSH |
| ) | |
| PORT AUTHORITY OF ) | |
| NEW YORK AND NEW JERSEY, *et al.* ) | |
| ) | |
|     Defendants ) | |

---

**BRIEF IN SUPPORT OF PLAINTIFF'S OPPOSITION TO
DEFENDANTS PORT AUTHORITY OF NEW YORK AND NEW JERSEY AND
POLICE OFFICER SCOTT ERICKSON'S MOTION TO DISMISS**

Motion Date: October 5, 2009

Richard V. Gilbert
For the Firm
Evan F. Nappen Attorney At Law, P.C.
21 Throckmorton Avenue
Eatontown, NJ 07724
(732) 389-8888
(732) 389-8744 (fax)

Richard E. Gardiner
Suite 403
3925 Chain Bridge Road
Fairfax, VA 22030
(703) 352-7276
(703) 359-0938 (fax)

Attorneys for Plaintiff

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES  . . . . . . . . . . . . . . . . . . . . ii

STATEMENT OF ALLEGATIONS IN
SECOND AMENDED COMPLAINT  . . . . . . . . . . . . . . . . . . 1

ARGUMENT  . . . . . . . . . . . . . . . . . . . . . . . . . . 2

     I. THE COMPLAINT IS SUFFICIENT UNDER
        RULE 8(a)(2) AND SHOULD NOT BE DISMISSED  . . . . . . . 2

     II. THE COURT HAS JURISDICTION AS
         PLAINTIFF WAS NOT REQUIRED TO
         COMPLY WITH STATE STATUTORY
         CONDITIONS TO SUE THE PORT AUTHORITY  . . . . . . . . 6

     III. THE LAW OF THE CASE DOCTRINE
          DOES NOT PRECLUDE THIS ACTION  . . . . . . . . . . . 8

          A. 18 U.S.C. § 926A Creates
             A Private Right Of Action  . . . . . . . . . . . 9

          B. The Finding That Defendants Had
             Probable Cause To Arrest Revell
             Does Not Bar This Action  . . . . . . . . . . . 18

CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . 19

## TABLE OF AUTHORITIES

**CASES**                                                                    <u>Page</u>

*Arizona* v. *California*,
460 U.S. 605 (1983) . . . . . . . . . . . . . . . . . . . . 8, 18

*Ashcroft* v. *Iqbal*,
129 S.Ct. 1937 (2009) . . . . . . . . . . . . . 2, 3, 4, 5, 6

*Bell Atlantic Corp.* v. *Twombly*,
550 U. S. 544 (2007) . . . . . . . . . . . . . . . . . . 3, 6

*Blessing* v. *Freestone,*
520 U.S. 329 (1997) . . . . . . . . . . . . . . 10, 12, 17, 18

*Felder* v. *Casey,*
487 U.S. 131 (1988) . . . . . . . . . . . . . . . . . . . . 7

*Gonzaga University* v. *Doe*,
536 U.S. 273 (2002) . . . . . . . . . . . . . . . . . 15, 16

*Graham* v. *Connor,*
490 U.S. 386 (1989) . . . . . . . . . . . . . . . . . . 9, 10

*Jones* v. *Bock,*
549 U.S. 199 (2007) . . . . . . . . . . . . . . . . . . . . 8

*Jones* v. *Rath Packing Co.,*
430 U.S. 519 (1977) . . . . . . . . . . . . . . . . . . . 11

*Nixon* v. *Missouri Municipal League,*
541 U.S. 125 (2004) . . . . . . . . . . . . . . . . . . . 12

*Patsy* v. *Florida Board of Regents,*
457 U.S. 496 (1982) . . . . . . . . . . . . . . . . . . 6, 7

*Rancho Palos Verdes* v. *Abrams*,
544 U.S. 113 (2005) . . . . . . . . . . . . . . . . . 15, 16

*Wilder* v. *Virginia Hospital Assn.,*
496 U.S. 498 (1990) . . . . . . . . . . . . . . . . . 14, 15

*Wright* v. *Roanoke Redevelopment and
Housing Authority,*
479 U.S. 418 (1987) . . . . . . . . . . . . . 12, 13, 14, 15

**UNITED STATES STATUTES**

18 U.S.C. § 926A . . . . . . . . . . . . . . . . . . *passim*

42 U.S.C. § 1983 . . . . . . . . . . . . . . . . . . *passim*

**STATE STATUTES**

N.J.S. § 2C:39-5(b) . . . . . . . . . . . . . . . . . 5

N.J.S. § 2C:39-3(f) . . . . . . . . . . . . . . . . . 5

**RULES**

Fed.R.Civ.Pro. Rule 8(a)(2) . . . . . . . . . . . . . 2

**STATEMENT OF ALLEGATIONS IN SECOND AMENDED COMPLAINT**

Defendants recite paragraphs 13 and 17 of the Second Amended Complaint (Memorandum 7), but omit paragraphs 11-12 and 14-16, which state:

> 11) Non-resident members of the Association travel from States in which possession and carrying of firearms by them is lawful to other States in which possession and carrying of firearms by them is lawful.
>
> 12) Non-resident members of the Association travel throughout the United States and pass through New Jersey en route to their destinations.  Some such travels involve passage through Newark Liberty International Airport ("Newark Airport") and other locations subject to the jurisdiction of the Port Authority.
>
> 14) Non-resident members of the Association who are entitled to transport a firearm and ammunition through New Jersey pursuant to 18 U.S.C. § 926A intend to do so, but are refraining from doing so because they are subject to arrest and prosecution pursuant to N.J.S. § 2C:39-5(b) and N.J.S. § 2C:39-3(f), and it is Port Authority policy and/or practice to arrest such persons.
>
> 15) Non-resident members of the Association wish to travel with their firearms through Newark Airport and other locations that are subject to the jurisdiction of the Port Authority, but they are effectively coerced and intimidated by Port Authority policy and/or practice of disregarding 18 U.S.C. § 926A into refraining from doing so.
>
> 16) As a result of the policy and/or practice of the Port Authority to disregard 18 U.S.C. § 926A, such non-resident members of the Association are coerced and intimidated into taking one of two courses of action: (i) When traveling with firearms lawfully pursuant to 18 U.S.C. § 926A, they avoid Newark Airport and other locations subject to the jurisdiction of the Port Authority to avoid unlawful arrest by the Port Authority, even though they have a right under 18 U.S.C. § 926A to travel unmolested through such locations with firearms; or (ii) alternatively, they refrain from possessing firearms when traveling through Newark Airport and other

-1-

locations subject to the jurisdiction of the Port Authority, even though they have the right under 18 U.S.C. § 926A to possess firearms during such travel.

**ARGUMENT**

I.

THE COMPLAINT IS SUFFICIENT UNDER
RULE 8(a)(2) AND SHOULD NOT BE DISMISSED

Defendants assert that two paragraphs of the second amended complaint (paragraphs 13 and 17) are inadequate under Fed.R.Civ.Pro. Rule 8(a)(2) as recently applied in *Ashcroft* v. *Iqbal*, 129 S.Ct. 1937 (2009). On the contrary, the second amended complaint meets the standards of Fed.R.Civ.Pro. Rule 8(a)(2).

The essential holding of *Iqbal* was as follows:

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." As the Court held in [*Bell Atlantic Corp.* v.] *Twombly*, [550 U. S. 544 (2007)], the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. *Id.*, at 555 (citing *Papasan* v. *Allain*, 478 U. S. 265, 286 (1986)). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." 550 U. S., at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.*, at 557.

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.*, at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.*, at 556.

129 S.Ct. at 1949.

*Iqbal* further explained the "working principles that unlie

-2-

[the] decision in *Twombly*:

> First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . . Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.*, at 556. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. 490 F.3d, at 157-158. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged —— but it has not "show[n]" —— "that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

129 S.Ct. at 1949-50.

After Defendants extensively review the facts of *Iqbal* and *Twombly* (Memorandum 10-19), they simply assert, in conclusory fashion, with no analysis, that paragraphs 13 and 17 of the second amended complaint "are completely unsupported and unsupportable. They are precisely the sort of conclusory statements that *Twombly* and *Iqbal* direct are not to be tolerated." Memorandum 20. On the contrary, while paragraph 17 standing alone may be conclusory, paragraphs 11 through 17 are not merely conclusory statements, but contain factual allegations, so that the second amendment complaint more than meets the pleading standards of *Twombly* and *Iqbal*.

In paragraph 11, the factual allegation is made that non-resident members of the Association "travel from States in which possession and carrying of firearms by them is lawful to other States in which possession and carrying of firearms by them is

-3-

lawful."   Paragraph 12 makes the factual allegation that non-resident members of the Association "pass through New Jersey en route to their destinations" and that some such travels "involve passage through Newark Liberty International Airport ("Newark Airport") and other locations subject to the jurisdiction of the Port Authority."   These allegations in these two paragraphs are plainly not merely "a formulaic recitation of the elements of a cause of action" nor a "[t]hreadbare recitals of the elements of a cause of action" nor mere legal conclusion.   129 S.Ct. at 1949.

In paragraph 13, the factual allegation is made that it is "the ongoing policy and/or practice of the Port Authority to disregard 18 U.S.C. § 926A and to arrest travelers in possession of firearms under color of New Jersey statutes even though such possession is protected by 18 U.S.C. § 926A."   This is not merely "a formulaic recitation of the elements of a cause of action . . . ."   129 S.Ct. at 1949.   Nor is it a "[t]hreadbare recital[] of the elements of a cause of action" (*Id.*) or a mere legal conclusion. It is also a plausible claim for relief, particularly when viewed in the context of the entire second amended complaint, from which the court can infer more than the mere possibility of misconduct.

Further, paragraph 14 makes the factual allegations that non-resident members of the Association who are entitled to transport a firearm and ammunition through New Jersey pursuant to 18 U.S.C. § 926A intend to do so, but "are refraining from doing so because

they are subject to arrest and prosecution" pursuant to N.J.S. §
2C:39-5(b) and N.J.S. § 2C:39-3(f), and "it is Port Authority
policy and/or practice to arrest such persons."   Similarly,
paragraph 15 makes the factual allegations that non-resident
members of the Association "wish to travel with their firearms
through Newark Airport and other locations that are subject to the
jurisdiction of the Port Authority," but they are "effectively
coerced and intimidated by Port Authority policy and/or practice of
disregarding 18 U.S.C. § 926A into refraining from doing so."
Finally, paragraph 16 makes the factual allegations that, as a
result of the policy and/or practice of the Port Authority, non-
resident members of the Association are "coerced and intimidated
into taking one of two courses of action: (i) When traveling with
firearms lawfully pursuant to 18 U.S.C. § 926A, they avoid Newark
Airport and other locations subject to the jurisdiction of the Port
Authority to avoid unlawful arrest by the Port Authority," or (ii)
"they refrain from possessing firearms when traveling through
Newark Airport and other locations subject to the jurisdiction of
the Port Authority . . . ."   Again, these allegations are not
merely "a formulaic recitation of the elements of a cause of action
. . . ."   129 S.Ct. at 1949.   Nor are they "[t]hreadbare recitals
of the elements of a cause of action" (*Id.*) or a mere legal
conclusions.

In short, when the entire second amended complaint is

-5-

reviewed, and the two paragraphs referred to by Defendants not viewed in isolation, it is clear that the second amended complaint more than meets the pleading standards of *Twombly* and *Iqbal*.

## II.
## THE COURT HAS JURISDICTION AS PLAINTIFF WAS NOT REQUIRED TO COMPLY WITH STATE STATUTORY CONDITIONS TO SUE THE PORT AUTHORITY

Defendants argue that the second amended complaint "is barred by the plaintiff's failure to comply with the limited waiver of sovereign immunity and consent to suit as set forth in the Port Authority's suability statute . . . ." Memorandum 20. Because this is an action pursuant to 42 U.S.C. § 1983, Plaintiff was not required to comply with state statutory conditions to sue the Port Authority.

In *Patsy v. Florida Board of Regents,* 457 U.S. 496 (1982), Patsy brought an action under 42 U.S.C. § 1983 seeking "declaratory and injunctive relief or, in the alternative, damages." 457 U.S. at 497. Explaining that "[t]he very purpose of § 1983 was to interpose the federal courts between the States and the people, as guardians of the people's federal rights — to protect the people from unconstitutional action under color of state law, whether that action be executive, legislative, or judicial," 457 U.S. at 503 (internal quotation marks and citations omitted), the Court held that "exhaustion of state administrative remedies should not be required as a prerequisite to bringing an action pursuant to § 1983." 457 U.S. at 516.

*Felder v. Casey,* 487 U.S. 131 (1988), reaffirmed *Patsy* even as to § 1983 actions brought in state court.   In *Felder*, the plaintiffs had brought an action pursuant to 42 U.S.C. § 1983 in state court.   State law included a notice provision which:

> impose[d] an exhaustion requirement on persons who choose to assert their federal right in state courts, inasmuch as the § 1983 plaintiff must provide the requisite notice of injury within 120 days of the civil rights violation, then wait an additional 120 days while the governmental defendant investigates the claim and attempts to settle it.

487 U.S. at 146-147.

In holding that the state law was preempted by the Supremacy Clause, *Felder* first noted that, in *Patsy*, the Court had held that "plaintiffs need not exhaust state administrative remedies before instituting § 1983 suits in federal court."   487 U.S. at 147.   The Court further stated that the authority of States "to prescribe the rules and procedures governing suits in their courts" did not authorize states to "place conditions on the vindication of a federal right."   487 U.S. at 147.

In rejecting the argument that the state administrative remedies were *de minimus*, *Felder* stated that actions pursuant to § 1983 "'exist independent of any other legal or administrative relief that may be available as a matter of federal or state law. They are judicially enforceable *in the first instance.'* (citation omitted)(emphasis in original)."   487 U.S. at 148.   Accordingly, States "may not adulterate or dilute the predominant feature of the

federal right by imposing mandatory settlement periods, no matter how reasonable the administrative waiting period or the interests it is designed to serve may appear." *Id.* See also *Jones v. Bock,* 549 U.S. 199, 11 (2007)(§ 1983 "does not require exhaustion at all").

None of the numerous cases cited by Defendants (Memorandum 23-29) involved § 1983 actions. Accordingly, none of the cited cases are applicable here.

In sum, because Plaintiff has brought this action pursuant to § 1983, Plaintiff need not comply with any state statutory conditions to maintain this action.

III.
THE LAW OF THE CASE DOCTRINE
<u>DOES NOT PRECLUDE THIS ACTION</u>

The law of the case doctrine "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Arizona* v. *California*, 460 U.S. 605, 618 (1983). This court's opinion of June 29, 2007, dismissing Count I of the original complaint (because 18 U.S.C. § 926A did not create a private right of action),[1] is not

---

[1] Defendants state that this court's conclusion that 18 U.S.C. § 926A did not create a private right of action "was not the subject of an appeal and therefore remains the law of the case." Memorandum 31. This is false; Revell appealed both the order of June 29, 2007, dismissing Counts I-III, with leave to amend, and the order of March 31, 2009 granting summary judgment to Defendants on Counts I-II, as amended. Count III had been voluntarily dismissed by Revell as the property had been returned, and the dismissal of Count IV had been interlocutorily appealed.

the law of the case as to Plaintiff here as Plaintiff here was dismissed because it did not have standing.  Thus, the court must consider anew whether 18 U.S.C. § 926A creates a private right of action.

A.
18 U.S.C. § 926A Creates
<u>A Private Right Of Action</u>

When this court concluded that 18 U.S.C. § 926A did not create a private right of action, it stated:

> The Supreme Court has specifically held that all § 1983 claims alleging an unlawful seizure must be brought pursuant to the Fourth Amendment.  *Graham v. Connor,* 490 U.S. 386, 395 (1989)(holding that "[b]ecause the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment . . . must be the guide for analyzing these claims").

Opinion (6/29/07) at 10.

This statement misapplied *Graham v. Connor* and reached a conclusion concerning § 1983 that is directly contrary to Supreme Court case law.

In *Graham v. Connor*, the issue before the Court was "what constitutional standard governs a free citizen's claim that law enforcement officials used excessive force in the course of making an arrest, investigatory stop, or other 'seizure' of his person." 490 U.S. at 388.  Unlike in the case at bar, the plaintiff did not assert that any right secured to him by a *federal statute* had been violated.

The Court first noted that, in addressing an excessive force

-9-

claim brought under § 1983, "analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force." 490 U.S. at 394. The plaintiff's claim for use of excessive force was brought both as a Fourth Amendment violation and as violation of substantive due process. The Court rejected substantive due process as a basis for an excessive force claim, holding:

> *[A]ll* claims that law enforcement officers have used excessive force — deadly or not — in the course of an arrest, investigatory stop, or other "seizure" of a free citizen should be analyzed under the Fourth Amendment and its "reasonableness" standard, rather than under a "substantive due process" approach. Because the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.

490 U.S. at 395.

In the case at bar, Plaintiff does not claim excessive force had been used. Moreover, as the plaintiff in *Graham v. Connor* did not assert that any right secured to him by a *federal statute* had been violated, there is no discussion whatever in *Graham v. Connor* concerning whether a person may bring a claim alleging a violation of a right secured by a federal statute where he also may have a Fourth Amendment claim. Thus, *Graham v. Connor* does not hold that all § 1983 claims alleging an unlawful seizure must be brought pursuant to the Fourth Amendment.

In *Blessing v. Freestone,* 520 U.S. 329 (1997), the Court

-10-

reiterated a three factor test for determining whether a federal
statute created a right for which § 1983 provided a damages remedy:

> First, Congress must have intended that the provision in
> question benefit the plaintiff. *Wright* v. *Roanoke
> Redevelopment and Housing Authority*, 479 U.S. 418, 430
> (1987). Second, the plaintiff must demonstrate that the
> right assertedly protected by the statute is not so
> "vague and amorphous" that its enforcement would strain
> judicial competence. *Id.*, at 431-432. Third, the
> statute must unambiguously impose a binding obligation on
> the States. In other words, the provision giving rise to
> the asserted right must be couched in mandatory, rather
> than precatory, terms.

520 U.S. at 340-341.

§ 926A meets all three of these factors. First, § 926A, by
its plain terms, was intended to benefit Plaintiff's non-resident
members as it provides an express federal "entitl[ment] to
transport a firearm" through a state "from any place where he may
lawfully possess and carry such firearm to any other place where he
may lawfully possess and carry such firearm," and Plaintiff's non-
resident members intend to transport firearms and ammunition
through New Jersey from places where they could lawfully possess
and carry a firearm to places where they could lawfully possess and
carry a firearm. That entitlement was created pursuant to
Congress' power under the under the Supremacy Clause (U.S. Const.,
Art. VI, cl. 2) to preempt state law.[2]  As an affirmative

---

[2] "[W]hen Congress has 'unmistakably . . . ordained,' *Florida Lime
& Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142 (1963), that its
enactments alone are to regulate a part of commerce, state laws
regulating that aspect of commerce must fall." *Jones v. Rath Packing
Co.,* 430 U.S. 519, 525 (1977).

entitlement, transportation of a firearm interstate is a lawful
act, unless its possession and carrying where the transportation
originated was unlawful, or where the transportation terminates
would be unlawful.  As the Supreme Court explained in *Nixon v.
Missouri Municipal League,* 541 U.S. 125 (2004):

> In familiar instances of regulatory preemption under the
> Supremacy Clause, a federal measure preempting state
> regulation in some precinct of economic conduct carried
> on by a private person or corporation simply leaves the
> private party free to do anything it chooses consistent
> with the prevailing federal law. . . .  On the subject
> covered, state law just drops out.

541 U.S. at 133.[3]

The second *Blessing* factor ("the plaintiff must demonstrate
that the right assertedly protected by the statute is not so 'vague
and amorphous' that its enforcement would strain judicial
competence"), is concerned with whether the protected *right itself*
is not so "vague and amorphous" that its enforcement "would strain
judicial competence."

While *Blessing* did not address whether the statute at issue in
the case was so "vague and amorphous" that its enforcement "would
strain judicial competence" because the Court found there was no
enforceable right, the Court's decision (and the dissent) in
*Wright* v. *Roanoke Redevelopment and Housing Authority*, 479 U.S. 418
(1987) shed light on the meaning of second factor.

---

[3]    While *Nixon* deals with "economic conduct," there is nothing
inherent in the Supremacy Clause which would treat possession of a
firearm in commerce differently.

In *Wright*, the plaintiffs were "tenants living in low-income housing projects owned by [the Housing Authority]" who brought suit under § 1983 alleging that the Housing Authority:

> overbilled them for their utilities and thereby violated the rent ceiling imposed by the Brooke Amendment to the Housing Act of 1937, and the implementing regulations of the Department of Housing and Urban Development (HUD).

479 U.S. at 419.

HUD had "consistently considered 'rent' to include a reasonable amount for the use of utilities," which was defined by regulation "as that amount equal to or less than an amount determined by the PHA to be a reasonable part of the rent paid by low-income tenants."  479 U.S. at 420.  The Housing Authority argued, *inter alia*, that "the provision for a 'reasonable' allowance for utilities" was "too vague and amorphous to confer on tenants an enforceable 'right' . . . ."  479 U.S. at 431.  The Court rejected this argument because:

> The regulations, however, defining the statutory concept of "rent" as including utilities, have the force of law, (citation omitted), they specifically set out guidelines that the PHAs were to follow in establishing utility allowances, and they require notice to tenants and an opportunity to comment on proposed allowances.

479 U.S. at 431-432.

Thus, the Court concluded that the "benefits Congress intended to confer on tenants are sufficiently specific and definite to qualify as enforceable rights" which were not "beyond the competence of the judiciary to enforce."  479 U.S. at 432.

-13-

The dissent asserted that the regulations upon which the Court based its conclusion were "not capable of judicial enforcement" because they were "subject to the exercise of wide discretion by the local housing authorities, thereby rendering it difficult or impossible to determine whether a violation occurred." 479 U.S. at 438. Moreover, the regulations "were cast as overall standards rather than as a method for determining the utilities rates for particular tenants, making it impossible to fashion appropriate relief for individual plaintiffs." *Id.* In particular, housing authorities were:

> to establish allowances which could "reasonably be expected" to meet the requirements of "about 90%" of the dwelling units in a particular "dwelling unit category." In making this calculation, the housing authorities were to exclude from consideration cases of "unusual individual circumstances," "wasteful practices," or use of major appliances. Adjustments also could be made, "if warranted," for "abnormal weather conditions or other changes in circumstances affecting utility consumption." See 24 CFR § 865.477 (1981). The housing authorities were to revise their utility allowances if more than 25% of the tenants in a particular dwelling unit category were being surcharged, if there was "no reason of a non-recurring nature (such as weather extremes) to account for this" and if it was otherwise "appropriate." § 865.480(b).

479 U.S. at 438-439.

Thus, the clear lesson of *Wright* is that the focus of the "vague and amorphous" factor is on the language of the statutory right. Similarly, in *Wilder v. Virginia Hospital Assn.,* 496 U.S. 498 (1990), the Court found that *the law* was not so vague as to be beyond the competence of the judiciary to enforce:

-14-

the statute and regulation set out factors which a State
must consider in adopting its rates. [footnote omitted].
In addition, the statute requires the State, in making
its findings, to judge the reasonableness of its rates
against the objective benchmark of an "efficiently and
economically operated facilit[y]" providing care in
compliance with federal and state standards while at the
same time ensuring "reasonable access" to eligible
participants.

496 U.S. at 519 (emphasis added).

In light of *Wright* and *Wilder*, it is evident that the second
*Blessing* factor refers to the language of the law itself (either a
statute alone or in conjunction with implementing regulations).

Under the reasoning of *Wright* and *Wilder*, § 926A is neither
vague nor amorphous, and its enforcement would not strain judicial
competence.

*Rancho Palos Verdes v. Abrams*, 544 U.S. 113 (2005) and *Gonzaga
University v. Doe*, 536 U.S. 273 (2002) support Plaintiff's position
that there is a private cause of action under 42 U.S.C. § 1983 for
violation of § 926A.

In *Rancho Palos Verdes*, the issue was whether "Congress meant
the judicial remedy expressly authorized by § 332(c)(7) to coexist
with an alternative remedy available in a § 1983 action." 544 U.S.
120-121.  The Court concluded that the remedies did not coexist.
The Court first noted that:

the existence of a more restrictive private remedy for
statutory violations has been the dividing line between
those cases in which we have held that an action would
lie under § 1983 and those in which we have held that it
would not.

-15-

544 U.S. at 121.

Indeed, the Court observed that:

in *all* of the cases in which we have held that § 1983 *is* available for violation of a federal statute, we have emphasized that the statute at issue, in contrast to those in *Sea Clammers* and *Smith, did not* provide a private judicial remedy (or, in most of the cases, even a private administrative remedy) for the rights violated.

544 U.S. at 121.

Accordingly, *Rancho Palos Verdes* makes clear that the absence of a remedy in § 926A strongly suggests that there is a remedy under § 1983 in that "the dividing line between those cases" in which the Court has held that an action would lie under § 1983 and those in which it held that it would not was the "existence of a more restrictive private remedy for statutory violations . . . ." 544 U.S. at 121.

In *Gonzaga Univ. v. Doe,* the "question presented" was whether a student may sue a private university for damages under § 1983 to enforce provisions of the Family Educational Rights and Privacy Act of 1974 (FERPA or Act), 88 Stat. 571, 20 U.S.C. § 1232g, which prohibits the federal funding of educational institutions that have a policy or practice of releasing education records to unauthorized persons. The Court concluded that such an action was "foreclosed because the relevant provisions of FERPA create no personal rights to enforce" under § 1983. 536 U.S. at 276-277. There were "no personal rights to enforce" under § 1983 because the FERPA provisions at issue "entirely lack the sort of 'rights-creating'

-16-

language critical to showing the requisite congressional intent to create new rights." 536 U.S. at 287. The Court explained that "FERPA's provisions speak only to the Secretary of Education, directing that '[n]o funds shall be made available' to any 'educational agency or institution' which has a prohibited 'policy or practice.'" *Id.* Further, FERPA's nondisclosure provisions "speak only in terms of institutional policy and practice, not individual instances of disclosure." 536 U.S. at 288. In addition, "Congress expressly authorized the Secretary of Education to '*deal with violations*' of the Act, § 1232g(f) (emphasis added), and required the Secretary to 'establish or designate [a] review board' for investigating and adjudicating such violations, § 1232g(g)." 536 U.S. at 289. The Court concluded:

> FERPA's nondisclosure provisions contain no rights-creating language, they have an aggregate, not individual, focus, and they serve primarily to direct the Secretary of Education's distribution of public funds to educational institutions. They therefore create no rights enforceable under § 1983.

536 U.S. at 290.

In stark contrast to FERPA, § 926A contains *only* rights-creating language ("any person . . . shall be entitled") which has an individual focus. Thus, *Gonzaga Univ.* compels the conclusion that § 926A creates a right enforceable under § 1983.

With respect to the third *Blessing* factor ("the statute must unambiguously impose a binding obligation on the States"), in view of the plain language of § 926A that, ""Notwithstanding any other

provision of any law . . . of a State . . ., any person who is not otherwise prohibited by this chapter from transporting, shipping, or receiving a firearm shall be entitled to transport a firearm," § 926A unambiguously imposes a binding obligation on the States.

In sum, § 926A meets the three factors of *Blessing* and thus creates a private right of action under 42 U.S.C. § 1983.

B.
The Finding That Defendants Had Probable
Cause To Arrest Revell Does Not Bar This Action

Defendants argue, because this court found that there was probable cause to arrest Revell and that Officer Erickson had qualified immunity, that "the law of the case bars the Association's claims and they must be dismissed."  Memorandum 32. The law of the case doctrine "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case."  *Arizona* v. *California*, *supra*.  The rule of law decided by this court in the final order of March 31, 2009 was that Erickson had probable cause to arrest Revell because:

> Erickson grew suspicious that Revell's conduct fell outside of the protective ambit of 18 U.S.C. § 926A because he left the airport with the luggage for an overnight stay at a Newark hotel.

Opinion (3/31/09) at 9.[4]

---

[4]  This court also noted that Erickson "testified that he believed he had probable cause notwithstanding § 926A due to Revell's possession of hollow-nose ammunition" (Opinion (3/31/09) at 9), but this court expressly declined to address whether § 926A "pre-empts New Jersey's ban

Thus, it was because Revell's conduct "fell outside of the protective ambit of 18 U.S.C. § 926A" that this court found probable cause for the arrest.[5]  Plaintiff has not alleged that its non-resident members would engage in conduct that fell outside of the protective ambit of 18 U.S.C. § 926A.  On the contrary, the second amended complaint alleges that they would, but are refraining from, engaging in conduct that falls within the protective ambit of 18 U.S.C. § 926A.  Thus, the law of the case doctrine does not bar the Association's claims.

## CONCLUSION

The court should deny Defendants' motion to dismiss.


                              Respectfully submitted,

                              Association of New Jersey
                              Rifle & Pistol Clubs, Inc.
                              By counsel


                              s/Richard V. Gilbert
                              For the Firm
                              Evan F. Nappen Attorney At Law, P.C.
                              21 Throckmorton Avenue
                              Eatontown, NJ 07724
                              (732) 389-8888
                              (732) 389-8744 (fax)

---

on possession of hollow point bullets."  Opinion (3/31/09) at 11.

   [5]  As to qualified immunity, this court stated only that, "by virtue of Erickson having probable cause to arrest Revell, Erickson is entitled to qualified immunity and the Court need not reach the second prong." Opinion (3/31/09) at 12.

ON THE BRIEF:

Richard E. Gardiner
Suite 403
3925 Chain Bridge Road
Fairfax, VA 22030
(703) 352-7276
(703) 359-0938 (fax)