NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ASSOCIATION OF NEW JERSEY RIFLE & PISTOL CLUBS, INC.<br>    Plaintiff,<br><br>  v.<br><br>THE PORT AUTHORITY OF NEW YORK AND NEW JERSEY and PORT AUTHORITY POLICE OFFICER SCOTT ERICKSON,<br>    Defendants. | Civ. Action No. 06-0402 (KSH)<br><br><br><br><br><br>**OPINION** |

**Katharine S. Hayden, U.S.D.J.**

This action arises from the arrest of Gregg C. Revell, an out-of-state traveler, by an officer of the Port Authority of New York and New Jersey when he was traveling through Newark Liberty International Airport. Revell was charged with firearms violations because he was carrying a firearm and hollow-point bullets in his luggage. Revell sued Port Authority and the arresting officer, Scott Erickson (collectively, "Port Authority"), to recover damages for wrongful arrest under 42 U.S.C. § 1983. The Association of New Jersey Rifle & Pistol Clubs, Inc., a non-profit membership corporation, joined the suit, seeking an injunction enjoining Port Authority from enforcing the New Jersey statutes against the Association's non-resident members seeking to travel through New Jersey with their firearms and ammunition. The Court dismissed the Association's claim *sua sponte* for failure to establish a case or controversy between the parties as required by Article III of the Constitution. The Association appealed the

1

Court's denial of its motion to amend, and the Third Circuit held that the Court should have granted leave to amend the complaint to allege facts sufficient to demonstrate standing. The Association's amended complaint is the subject of Port Authority's pending motion to dismiss.

I. **FACTUAL & PROCEDURAL BACKGROUND**

On January 27, 2006, Revell and the Association jointly filed a complaint against Port Authority after Revell was interrogated and ultimately arrested at Newark Airport. [D.E. 1.] Revell was charged with possession of a firearm without a license in violation of N.J.S.A. § 2C:39-3(f) and with possession of hollow point bullets in violation of N.J.S.A. § 2C:39-5(b). A full summary of the facts surrounding Revell's arrest can be found in this Court's June 29, 2007 opinion that granted the Port Authority's motion to dismiss the original complaint. [D.E. 38.]

Revell and the Association alleged four counts against the Port Authority, three based on Revell's arrest and the fourth requesting injunctive relief on behalf of Association members. First, Revell sought damages pursuant to 42 U.S.C. § 1983, on the grounds that the rights granted to him under 18 U.S.C. § 926A were violated. (Or. Compl. ¶¶ 23-33.) The second and third counts sought damages and injunctive relief respectively, alleging that Revell's Fourteenth Amendment due process rights had been violated. (*Id.* ¶¶ 34-47.) The fourth claim, asserted by the Association on behalf of its non-resident members (i.e., members living outside of New Jersey), sought injunctive relief pursuant to § 1983 on the grounds that a credible threat existed that the Port of Authority would prosecute non-resident members for violations of New Jersey law and therefore deprive them "of rights, privileges or immunities secured by 18 U.S.C. § 926A." (*Id.* ¶¶ 48-54.) The Association sought to enjoin the Port Authority from enforcing N.J.S.A. § 2C:39-3(f) and § 2C:39-5(b) against its non-resident members who wish to transport firearms and ammunition through New Jersey pursuant to 18 U.S.C. § 926A. (*Id.* ¶ 54.)

18 U.S.C. § 926A provides:

> Notwithstanding any other provision of any law or any rule or regulation of a State or any political subdivision thereof, any person who is not otherwise prohibited by this chapter [18 U.S.C. §§ 921 et seq.] from transporting, shipping, or receiving a firearm shall be entitled to transport a firearm for any lawful purpose from any place where he may lawfully possess and carry such firearm to any other place where he may lawfully possess and carry such firearm if, during such transportation the firearm is unloaded, and neither the firearm nor any ammunition being transported is readily accessible or is directly accessible from the passenger compartment of such transporting vehicle: *Provided*, that in the case of a vehicle without a compartment separate from the driver's compartment the firearm or ammunition shall be contained in a locked container other than the glove compartment.

(emphasis in original). The statute permits the transportation of firearms and ammunition through a state "even if possession of the firearms in that state would otherwise be illegal, so long as: (1) the firearms and ammunition are lawful in both the states of embarkation and destination; and (2) neither the firearms nor ammunition are readily accessible during transportation." (Dist. Ct. Op., Aug. 10, 2007.) [D.E. 53.]

On September 18, 2006, the Port Authority filed a motion to dismiss the first three counts in the complaint. [D.E. 7.] This Court filed an opinion granting the motion to dismiss on June 29, 2007. [D.E. 38.] Revell was granted leave to amend the first three counts of the complaint (which are no longer at issue), and the court *sua sponte* dismissed the Association's claim for lack of standing. The June 29th opinion held that the Association did not meet the Article III injury in fact requirement necessary to establish standing because it had not shown a sufficient likelihood that its members would be injured in the future.

On July 13, 2007, Revell and the Association filed a motion to alter or amend the judgment pursuant to Federal Rule of Civil Procedure ("FRCP") 59(e), alleging an intervening change in controlling law, and sought leave to amend Count Four. [D.E. 45-1 at 1.] The Association claimed that the U.S. Supreme Court had recently clarified "what is necessary to

3

demonstrate a threat of prosecution which confers Article III standing," in *MedImmune, Inc. v. Genetech, Inc.*, 549 U.S. 118 (2007), and sought leave to amend the complaint in light of the *MedImmune* holding. [D.E. 45-1 at1-2.] This Court filed a second opinion on August 10, 2007, denying the motion to amend. [D.E 53.]

On September 7, 2007, the Association filed a notice of appeal. [D.E. 64.] At this point, Revell was no longer a party to the case. On April 23, 2009, the Third Circuit reversed this Court's August 10th decision denying the Association leave to amend the complaint, concluding that, had the Association been given leave to amend the complaint, it could have pled sufficient facts to meet the actual or imminent injury requirement of Article III. *Revell v. Port Auth. of N.Y. & N.J.*, 321 Fed. Appx. 113 (3d Cir. 2009). This Court was directed to "grant the Association leave to amend the complaint to allege facts sufficient to demonstrate standing." *Id.* at 118. On April 29, 2009, the District Court granted the Association leave to amend [D.E. 119], and the Association filed the second amended complaint on May 29th. [D.E. 120.]

Presently before the Court is Port Authority's motion to dismiss the second amended complaint, alleging three grounds for dismissal: (1) failure to state a claim pursuant to FRCP 12(b)(6); (2) failure to comply with statutory conditions pursuant to FRCP 12(b)(1) precedent to bringing suit for injunctive relief against Port Authority; and (3) claim preclusion based on the Law of the Case Doctrine. [D.E. 125.]

## II. THE SECOND AMENDED COMPLAINT

Pursuant to § 1983, the second amended complaint seeks injunctive relief preventing Port Authority from enforcing N.J.S.A. § 2C:39-5(b) and § 2C:39-3(f) against non-resident members of the Association who wish to transport firearms and ammunition through New Jersey pursuant to 18 U.S.C. § 926A. (Sec. Am. Compl. ¶ 18.) According to the complaint:

4

11) Non-resident members of the Association travel from States in which possession and carrying of firearms by them is lawful to other States in which possession and carrying of firearms by them is lawful.

12) Non-resident members of the Association travel throughout the United States and pass through New Jersey en route to their destinations. Some such travels involve passage through Newark Liberty International Airport ("Newark Airport") and other locations subject to the jurisdiction of the Port Authority.

13) It is the ongoing policy and/or practice of the Port Authority to disregard 18 U.S.C. § 926A and to arrest travelers in possession of firearms under color of New Jersey statutes even though such possession is protected by 18 U.S.C. § 926A.

14) Non-resident members of the Association who are entitled to transport a firearm and ammunition through New Jersey pursuant to 18 U.S.C. § 926A intend to do so, but are refraining from doing so because they are subject to arrest and prosecution pursuant to N.J.S. § 2C:39-5(b) and N.J.S. § 2C:39-3(f), and it is Port Authority policy and/or practice to arrest such persons.

15) Non-resident members of the Association wish to travel with their firearms through Newark Airport and other locations that are subject to the jurisdiction of the Port Authority, but they are effectively coerced and intimidated by Port Authority policy and/or practice disregarding 18 U.S.C. § 926A into refraining from doing so.

16) As a result of the policy and/or practice of the Port Authority to disregard 18 U.S.C. § 926A, such non-resident members of the Association are coerced and intimidated into taking one of two courses of action: (i) When traveling with firearms lawfully pursuant to 18 U.S.C. § 936A, they avoid Newark Airport and other locations subject to the jurisdiction of the Port Authority to avoid unlawful arrest by the Port Authority, even though they have a right under 18 U.S.C. § 926A to travel unmolested through such locations with firearms; or (ii) alternatively, they refrain from possessing firearms when traveling through Newark Airport and other locations subject to the jurisdiction of the Port Authority, even though they have a right under 18 U.S.C. § 926A.

17) . . . [Port Authority and Erickson] are depriving non-resident members of the Association who are entitled to transport a firearm and ammunition through New Jersey pursuant to 18 U.S.C. § 926A of rights, privileges, or immunities secured by 18 U.S.C. § 926A.

(*Id.* ¶¶ 11-17.)

### III. *MEDIMMUNE*

The Court examines the foregoing facts in light of *Medimmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128-29 (2007), where the U.S. Supreme Court held that when a lawsuit is based on threatened action by the government, the law does not "require a plaintiff to expose himself to liability before bringing suit to challenge the basis for the threat . . . ."  The *Medimmune* Court explained that "[t]he plaintiff's own action (or inaction) in failing to violate the law eliminates the imminent threat of prosecution, but nonetheless does not eliminate Article III jurisdiction." *Id.* at 129.

When it remanded, the Third Circuit found that "the Association's allegations were sufficiently specific to support the notion that its members have suffered injury.  So pled, there is a sufficient likelihood that its members will be wronged as the threat of arrest meets the requirement that the injury be actual or imminent." *Revell v. Port Auth. of N.Y. & N.J.*, 321 Fed. Appx. 113, 117 (3d Cir. 2009).  However, even accepting the pleadings as sufficient, the Third Circuit added this language:

> We think it is worth noting that plaintiffs continue to carry their burden to show standing; they cannot rest on their pleadings.  The Association claims that it has non-resident members who are currently refraining from traveling through New Jersey with firearms and ammunition due to the alleged Port Authority Policy.  It may turn out . . . that the Association cannot identify actual members who are so refraining.  If this is the case, the Association's standing will evaporate quickly.

*Id.* at 117 n. 2.

Consequently, the Court continues its analysis of the sufficiency of the pleadings with this caution in mind, and applies the current standard of review under FRCP 12(b)(6).

### IV. STANDARD OF REVIEW

FRCP 12(b)(6) permits courts to dismiss a complaint for "failure to state a claim upon which relief can be granted." When considering the motion, the district court judge is "required to accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). The standard is "not whether plaintiffs will ultimately prevail in a trial on the merits, but whether they should be afforded an opportunity to offer evidence in support of their claims." *Bensel v. Allied Pilots Ass'n*, 387 F.3d 298, 312 (3d Cir. 2004) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), overruled on other grounds).

The pleading standard has been heightened through decisions of the U. S. Supreme Court, beginning with *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and further refined in *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). In the latter, the Supreme Court emphasized the distinction between factual contentions and legal conclusions, and cautioned against accepting as sufficient "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Interpreting *Iqbal*, in *Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir. 2009), the Third Circuit wrote that the task of the district court is to apply a two-prong test:

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts.

*Id.* at 210-11 (citations omitted).

## V. DISCUSSION

The parties briefed this motion after the *Fowler* decision, but the case is not discussed in their submissions. Reading the record in the best possible light for the Association, the Court applies the two-prong *Fowler* pleading standard. For the first prong, the Court separates the factual and legal elements within the complaint. *Iqbal*, 129 S. Ct. at 1949, made it clear that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."

The Association alleges in paragraph 11 and 12 that non-resident Association members travel from states in which their possession and carrying of firearms is lawful to other states with the same policies, and that on their travels they pass through New Jersey, specifically through Newark Liberty Airport and other areas under Port Authority jurisdiction. Paragraph 13 alleges that Port Authority had an ongoing policy and/or practice of disregarding 18 U.S.C. § 926A. and the next three paragraphs recite that non-resident Association members intend to travel through New Jersey but refrain from doing so because of the Port Authority practice of disregarding § 926A and making arrests, by means of which they are effectively intimidated and coerced into taking alternate routes to their destinations or traveling without their firearms. Then the Association alleges in paragraph 17 that Port Authority is depriving non-resident members of their "rights, privileges, or immunities" secured by 18 U.S.C. § 926A under the color of New Jersey law. Port Authority argues in its moving brief that the allegations in these paragraphs are legal conclusions that fall short of the new plausibility pleading standard articulated by *Twombly* and *Iqbal*, and that the Court must disregard them when determining whether the complaint meets the pleading threshold. According to the argument, the Association no more supports its allegations by facts than the plaintiff's allegation in *Iqbal*, 129 S. Ct. at 1951, that defendant

Ashcroft was the principal architect of an "invidious policy," or the plaintiffs' allegation in *Twombly*, 550 U.S. at 551, that there was a "contract, combustion or conspiracy to prevent" competition.

In its opposition brief, the Association concedes that, standing alone, paragraph 17 "may be conclusory[,]" but that taken with paragraphs 11 through 16 it is sufficient to meet the pleading standard. (Opp'n. Br. 3.) The Association also argues that paragraph 13 is a factual allegation and that the Court "can infer more than the mere possibility of misconduct." (*Id.* at 4.)

The Court disagrees about paragraph 13, which states: "It is the ongoing policy and/or practice of the Port Authority to disregard 18 U.S.C. § 926A and to arrest travelers in possession of firearms under color of New Jersey statutes even though such possession is protected by 18 U.S.C. § 926A." That sentence is a charge against the Port Authority, and identifies what plaintiff is aggrieved about. There are no factual assertions supporting the conclusion that the Port Authority disregards firearm-bearing travelers' rights under §926A. The paragraphs immediately before paragraph 13 allege that non-resident Association members travel between states in which possession and carrying firearms is legal and pass through New Jersey in the course of that travel; the paragraphs immediately after paragraph 13 allege that traveling Association members in possession of firearms, in order to avoid the policy described in paragraph 13, either do not carry, or do not travel through places under Port Authority jurisdiction like Newark Airport. Paragraphs 15 and 16 describe these Association travelers as coerced and intimidated into making those choices—a conclusion not supported by facts.

The Court must decide if the pleading standards taught by *Twombly* and the cases decided in its wake are met in the paragraphs that attempt to put a face to the practice decried in paragraph 13, and given conclusory constitutional significance in paragraph 17. Devoid of time,

9

place, numerosity, identity (aside from allegations of shadowy non-resident Association members coming and going from unidentified states to unidentified states as they are), these paragraphs fit the description of "threadbare recitals of the elements of the cause of action." *Fowler,* 578 F.3d at 210. The facts are not separated from the legal conclusions so that the Court is in a position to accept them as true, standing apart from the legal conclusions which need not be accepted as true. The bare minimum of factual material to support the conclusion that the Port Authority is illegally arresting travelers and as such, interfering with their rights, privileges, and immunities, is offered. The paragraphs amount to little more than a "what if?" application of the assertion that the Port Authority is ignoring the carve-out benefits of § 926A. As such, the allegations in the second amended complaint do not satisfy the first prong of the *Fowler* test.

*Fowler's* second prong requires that the factual allegations state "a plausible claim for relief." *Id.* at 211. Each of the pertinent paragraphs is written to support the legal conclusion asserted in paragraph 13, that Port Authority has a policy and/or practice of disregarding 18 U.S.C. § 926A and arresting travelers. The allegations in paragraphs 14 through 16 are not factual contentions that illustrate a policy and/or practice—they are consequences that might flow if the Court first were to accept the Association's legal conclusion. The allegation that non-resident Association members who travel through New Jersey either forego passing through areas under Port Authority's jurisdiction, or refrain from bringing their firearms with them, while superficially a factual contention, upon closer scrutiny is inextricable from the legal conclusion that the Port Authority policy is, per paragraph 17 (admittedly a legal conclusion), depriving the travelers of their rights, privileges, and immunities. At best, the complaint describes what is not happening—arrests by the Port Authority of traveling non-resident Association members carrying firearms—and alleges this is the result of the travelers taking alternate routes because

the travelers are intimidated and coerced and as such, deprived of constitutional rights. Seen thus, none of the facts dotting paragraphs 11 through 17 are proper stand-alone facts that, seen in their best light, permit the Court "to draw the reasonable inference that [Port Authority] is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 556). The plausibility requirement of *Fowler* is not met.

The Court finds that the heightened pleading standards announced in *Twombly* and explained in *Fowler* require that the second amended complaint must be dismissed.

## VI. CONCLUSION

Based on the foregoing, defendant Port Authority's motion to dismiss is **granted**, and the second amended complaint is dismissed. An appropriate order will be entered.

/s/ Katharine S. Hayden
Katharine S. Hayden, U.S.D.J.
