IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

```
_____
ASSOCIATION OF NEW JERSEY          )
RIFLE & PISTOL CLUBS, INC.         )
                                   )
     Plaintiff                     )
                                   )
          v.                       )    No. 06-402-KSH
                                   )
PORT AUTHORITY OF                  )
NEW YORK AND NEW JERSEY, et al.    )
                                   )
     Defendants                    )
_____
```

**PLAINTIFF'S BRIEF IN OPPOSITION TO MOTION FOR SUMMARY
JUDGMENT OF DEFENDANTS PORT AUTHORITY OF NEW YORK
AND NEW JERSEY AND POLICE OFFICER SCOTT ERICKSON**

Motion Date: March 5, 2012

Richard V. Gilbert
For the Firm
Evan F. Nappen Attorney At Law, P.C.
21 Throckmorton Avenue
Eatontown, NJ 07724
(732) 389-8888
(732) 389-8744 (fax)

Richard E. Gardiner
Suite 403
3925 Chain Bridge Road
Fairfax, VA 22030
(703) 352-7276
(703) 359-0938 (fax)

Attorneys for Plaintiff

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . ii

PRELIMINARY STATEMENT. . . . . . . . . . . . . . . . . . . . 1

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . 1

    INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . 1

    THE FIREARMS OWNERS PROTECTION ACT CREATES
    AN AFFIRMATIVE ENTITLEMENT THAT IS AN
    ACTIONABLE "RIGHT" UNDER 42 U.S.C. § 1983. . . . . . . . . 2

        A. There Is A Cause of Action
           Under 42 U.S.C. § 1983 For
           Violation Of 18 U.S.C. § 926A. . . . . . . . . . . 3

        B. *Gonzaga University* v. *Doe*. . . . . . . . . . . . . 9

        C. *Rancho Palos Verdes*. . . . . . . . . . . . . . . 11

        D. *Torraco* Was Wrongly Decided. . . . . . . . . . . 13

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . 27

## TABLE OF AUTHORITIES

**CASES**                                                                  Page

*A.W.* v. *Jersey City Public Schools*,
486 F.3d 791 (3d Cir. 2007). . . . . . . . . . . . . . . . .  12

*Barnhart v. Sigmon Coal Co.*,
534 U.S. 438 (2002). . . . . . . . . . . . . . . . . . . . .  22

*Blessing v. Freestone*,
520 U.S. 329 (1997). . . . . . . . . . . . . . . . . . . *passim*

*Blum v. Stenson*,
465 U.S. 886 (1984). . . . . . . . . . . . . . . . . . . 16, 21

*Christianson* v. *Colt Industries Operating Corp.*,
486 U.S. 800 (1988). . . . . . . . . . . . . . . . . . . . .  4

*Eldred v. Ashcroft*,
537 U.S. 186 (2003). . . . . . . . . . . . . . . . . . . . .  18

*Golden State Transit Corp. v. Los Angeles*,
493 U.S. 103 (1989). . . . . . . . . . . . . . . . . . . 15, 20

*Gonzaga University v. Doe*,
536 U.S. 273 (2002). . . . . . . . . . . . . . . . . . . *passim*

*McDonald* v. *Chicago, Illinois*,
561 U.S. 3025, 130 S.Ct. 3020 (2010). . . . . . . . . . . .  18

*Middlesex Cty. Sewerage Auth. v. Sea Clammers*,
453 U.S. 1 (1981). . . . . . . . . . . . . . . . . . . . 16, 23

*Newark Parents Ass'n* v. *Newark Public Schools*,
547 F.3d 199 (3d Cir. 2004). . . . . . . . . . . . . . . . 2, 12

*Rancho Palos Verdes v. Abrams*,
544 U.S. 113 (2005). . . . . . . . . . . . . . . . . . . 11, 23

*Revell* v. *Port Authority of New York and New Jersey*,
598 F.3d 128 (3d Cir. 2010). . . . . . . . . . . . . . . . . 2

*Sabree* v. *Richman*,
367 F.3d 180 (3d Cir. 2004). . . . . . . . . . . . . 2, 5, 9, 12

*Shaw v. Delta Air Lines, Inc.*,
463 U.S. 85 (1983). . . . . . . . . . . . . . . . . . . . .  17

*Smith v. Robinson*,
468 U.S. 992 (1984). . . . . . . . . . . . . . . . . . . . . . 23

*Torraco* v. *Port Authority*,
615 F.3d 129 (2d Cir. 2010). . . . . . . . . . . . . . . . *passim*

*Vimar Seguros Y Reaseguros, S. A. v. M/V Sky Reefer*,
515 U.S. 528 (1995). . . . . . . . . . . . . . . . . . . . . 18

*Wachovia Bank, N.A. v. Burke*,
414 F.3d 305 (2nd Cir. 2005). . . . . . . . . . . . . . 24, 25

*Wilder v. Virginia Hospital Assn.*,
496 U.S. 498 (1990). . . . . . . . . . . . . . . . . . . . 7, 8

*Wright* v. *Roanoke Redevelopment
and Housing Authority*,
479 U.S. 418 (1987). . . . . . . . . . . . . . 5, 6, 7, 15, 19


**UNITED STATES CONSTITUTION**

U.S. Const., Art. VI, cl. 2. . . . . . . . . . . . . . 4, 21, 26


**UNITED STATES STATUTES**

18 U.S.C. § 926A. . . . . . . . . . . . . . . . . . . *passim*

28 U.S.C. § 534 . . . . . . . . . . . . . . . . . . . . . 26

42 U.S.C. § 1983. . . . . . . . . . . . . . . . . . . *passim*

Firearm Owners Protection Act,
Pub.L. No. 99-308, 100 Stat. 449 (1986). . . . . 1, 3, 11, 12, 18


**REGULATIONS**

28 C.F.R. Part 20. . . . . . . . . . . . . . . . . . . . . 26

**PRELIMINARY STATEMENT**

At the outset, Plaintiffs note that the court has pending before it a previous motion by Plaintiffs for leave to file a Fourth Amended Complaint, which asserts newly available claims pursuant to 42 U.S.C. § 1983 based on other provisions of federal law for which there is no question that there is cause of action pursuant to § 1983 -- namely, the Fourteenth, Fifth, and Fourth Amendments to the United States Constitution. Thus, the court should decide Plaintiff's motion for leave to amend before deciding this summary judgment motion and Defendants' instant motion should be treated as a motion for partial summary judgment, which is not dispositive of the entire case.

**ARGUMENT**

<u>INTRODUCTION</u>

The Firearm Owners Protection Act ("FOPA") provides that "any person" legally allowed to possess a firearm under federal law "shall be *entitled* to transport" a firearm "from any place where he may lawfully possess and carry such firearm to any other place where he may lawfully possess and carry such firearm," under specified conditions, and "[n]otwithstanding any other provision of any law or any rule or regulation." 18 U.S.C. § 926A (emphasis added). This Brief explains why this self-described "entitle[ment]" is one of the "rights, privileges, or immunities secured by the Constitution and laws" of the United States, and

that 42 U.S.C. § 1983 accordingly provides a right of action against a State actor's ongoing threat to deprive entitled persons of it.

### THE FIREARMS OWNERS PROTECTION ACT CREATES AN AFFIRMATIVE ENTITLEMENT THAT IS AN ACTIONABLE "RIGHT" UNDER 42 U.S.C. § 1983

The Third Circuit has established a two-part test to determine whether a federal law creates a "right" that is actionable under § 1983. *See Newark Parents Ass'n v. Newark Public Schools*, 547 F.3d 199, 210 (3d Cir. 2008); *Sabree v. Richman*, 367 F.3d 180, 189 (3d Cir. 2004). The first step is to apply the three-part analysis of *Blessing v. Freestone*, 520 U.S. 329 (1997), to determine whether the statute confers a specific, individual entitlement. *See Sabree*, 367 F.3d at 189. A court's next consideration, per *Gonzaga University v. Doe*, 536 U.S. 273 (2002), is to determine whether the statute unambiguously confers an individual right. *See Sabree*, 367 F.3d at 189-90.

Defendants assert that there is no cause of action under 42 U.S.C. § 1983 for violation of 18 U.S.C. § 926A, citing this court's June 29, 2007 opinion dismissing former Plaintiff Revell's complaint and citing *Torraco* v. *Port Authority*, 615 F.3d 129 (2d Cir. 2010).[1] Because this court did not decide the issue and

---

[1] In the appeal of this court's dismissal of Revell's action under § 926A, the Third Circuit decided the case on the merits of § 926A and declined to "address the more difficult question of whether, if he had complied with § 926A, Revell would have been able to pursue a § 1983 claim based upon § 926A." *Revell* v. *Port*

-2-

because *Torraco* was wrongly decided as to the second factor under *Blessing*, this court should deny Defendants' motion for summary judgment.

A.
There Is A Cause of Action Under 42 U.S.C. § 1983
For Violation Of 18 U.S.C. § 926A

*Blessing* articulates a three factor test, derived from prior cases, to determine whether a federal statute creates a specific and enforceable entitlement for a beneficiary:

> First, Congress must have intended that the provision in question benefit the plaintiff. *Wright* v. *Roanoke Redevelopment and Housing Authority*, 479 U.S. 418, 430 (1987). Second, the plaintiff must demonstrate that the right assertedly protected by the statute is not so "vague and amorphous" that its enforcement would strain judicial competence. *Id.*, at 431-432. Third, the statute must unambiguously impose a binding obligation on the States. In other words, the provision giving rise to the asserted right must be couched in mandatory, rather than precatory, terms.

520 U.S. at 340-341.

FOPA meets all three of these factors.[2] First, § 926A, by its

---

*Authority of New York and New Jersey*, 598 F.3d 128, 136 (3rd Cir. 2010).

[2] This court has not previously decided whether, under the three *Blessing* factors, there is a cause of action under 42 U.S.C. § 1983 for violation of 18 U.S.C. § 926A. The court's opinion of June 29, 2007 concluded that Revell could not recover for a violation of § 926A because he had a cause of action for violation of his Fourth Amendment rights:

> Because individuals already have a method of recovering damages pursuant to § 1983 if they are arrested or charged without probable cause, it is unnecessary and, indeed, improper for this Court to conclude that § 1983 provides a separate or alternative remedy for a violation

-3-

plain terms, was intended to benefit Plaintiff's non-resident members as it provides an express federal "entitle[ment]" (18 U.S.C. § 926A) for a lawful firearm owner ("any person who is not otherwise prohibited by [federal law] from transporting, shipping, or receiving a firearm") to "transport a firearm" through a state "from any place where he may lawfully possess and carry such firearm to any other place where he may lawfully possess and carry such firearm." *Id.*[3] Plaintiff's non-resident members intend to transport firearms and ammunition through New Jersey from places where they could lawfully possess and carry firearms to places where they could lawfully possess and carry firearms. *See* Third Amended Complaint ¶¶ 11-12. Congress created that "entitle[ment]" pursuant to its power under the under the Supremacy Clause (U.S.

---

of § 926A.

Opinion at 10.

Moreover, to the extent this court has decided the question, it is not bound to adhere to its prior holding because a court "has the power to revisit prior decisions of its own or of a coordinate court in any circumstance . . . ." *Christianson v. Colt Industries Operating Corp.,* 486 U.S. 800, 817 (1988).

[3] *Torraco* agreed that § 926A met the first factor:

The district court determined Section 926A satisfies the first Blessing factor because it is "phrased in terms of the persons benefitted," and we agree. See *Gonzaga Univ.*, 536 U.S. at 284, 122 S.Ct. 2268. Indeed, Congress explicitly "entitle[d]" persons to transport firearms under the terms of Section 926A.

615 F.3d at 137.

Const., Art. VI, cl. 2) to preempt state law.  As a matter of federal law, therefore, there is an affirmative entitlement for a law-abiding firearm owner to transport a firearm through a state, "[n]otwithstanding any other provision of any law or any rule or regulation," unless its possession and carrying where the transportation originated was unlawful, or where the transportation terminates would be unlawful.

The second *Blessing* factor ("the plaintiff must demonstrate that the right assertedly protected by the statute is not so 'vague and amorphous' that its enforcement would strain judicial competence") is concerned with whether the protected *right itself* is not so "vague and amorphous" that its enforcement "would strain judicial competence."

While *Blessing* did not address whether the statute at issue in the case was so "vague and amorphous" that its enforcement "would strain judicial competence" (because the Court otherwise found there was no enforceable right), the Court's decision (and the dissent) in *Wright* v. *Roanoke Redevelopment and Housing Authority*, 479 U.S. 418 (1987) shed light on the meaning of second factor. The Third Circuit has identified *Wright* as one of the key cases in applying the rulings in both *Blessing* and *Gonzaga University*.  *See Sabree v. Richman*, 367 F.3d at 184-85.

In *Wright*, the plaintiffs were "tenants living in low-income housing projects owned by [the Housing Authority]" who brought suit

-5-

under § 1983 alleging that the Housing Authority:

> overbilled them for their utilities and thereby violated
> the rent ceiling imposed by the Brooke Amendment to the
> Housing Act of 1937, and the implementing regulations of
> the Department of Housing and Urban Development (HUD).

479 U.S. at 419.

HUD had "consistently considered 'rent' to include a
reasonable amount for the use of utilities," which was defined by
regulation "as that amount equal to or less than an amount
determined by the PHA to be a reasonable part of the rent paid by
low-income tenants."  479 U.S. at 420.  The Housing Authority
argued, *inter alia*, that "the provision for a 'reasonable'
allowance for utilities" was "too vague and amorphous to confer on
tenants an enforceable 'right' . . . ."  479 U.S. at 431.  The
Court rejected this argument because:

> The regulations, however, defining the statutory concept
> of "rent" as including utilities, have the force of law,
> (citation omitted), they specifically set out guidelines
> that the PHAs were to follow in establishing utility
> allowances, and they require notice to tenants and an
> opportunity to comment on proposed allowances.

479 U.S. at 431-432.

Thus, the Court concluded that the "benefits Congress intended
to confer on tenants are sufficiently specific and definite to
qualify as enforceable rights" which were not "beyond the
competence of the judiciary to enforce."  479 U.S. at 432.

The dissent asserted that the regulations upon which the Court
based its conclusion were "not capable of judicial enforcement"

-6-

because they were "subject to the exercise of wide discretion by the local housing authorities, thereby rendering it difficult or impossible to determine whether a violation occurred." 479 U.S. at 438. Moreover, the regulations "were cast as overall standards rather than as a method for determining the utilities rates for particular tenants, making it impossible to fashion appropriate relief for individual plaintiffs." *Id.* In particular, housing authorities were:

> to establish allowances which could "reasonably be expected" to meet the requirements of "about 90%" of the dwelling units in a particular "dwelling unit category." In making this calculation, the housing authorities were to exclude from consideration cases of "unusual individual circumstances," "wasteful practices," or use of major appliances. Adjustments also could be made, "if warranted," for "abnormal weather conditions or other changes in circumstances affecting utility consumption." See 24 CFR § 865.477 (1981). The housing authorities were to revise their utility allowances if more than 25% of the tenants in a particular dwelling unit category were being surcharged, if there was "no reason of a non-recurring nature (such as weather extremes) to account for this" and if it was otherwise "appropriate." § 865.480(b).

479 U.S. at 438-439.

Thus, the clear lesson of *Wright* is that the focus of the "vague and amorphous" factor is on the language of the statutory right itself. Similarly, in *Wilder v. Virginia Hospital Assn.,* 496 U.S. 498 (1990), the Court found that *the law* was not so vague as to be beyond the competence of the judiciary to enforce:

> the *statute and regulation* set out factors which a State must consider in adopting its rates. [footnote omitted]. In addition, the statute requires the State, in making

-7-

its findings, to judge the reasonableness of its rates against the objective benchmark of an "efficiently and economically operated facilit[y]" providing care in compliance with federal and state standards while at the same time ensuring "reasonable access" to eligible participants.

496 U.S. at 519 (emphasis added).

In light of *Wright* and *Wilder*, it is evident that the second *Blessing* factor refers to the language of the law itself (either a statute alone or in conjunction with implementing regulations).

Under the reasoning of *Wright* and *Wilder*, § 926A is neither vague nor amorphous, and its enforcement would not strain judicial competence.[4]

With respect to the third *Blessing* factor ("the statute must unambiguously impose a binding obligation on the States"), in view of the plain language of § 926A that, "Notwithstanding any other provision of any law . . . of a State . . ., any person who is not otherwise prohibited by this chapter from transporting, shipping, or receiving a firearm shall be entitled to transport a firearm," § 926A unambiguously imposes a binding obligation on the States.[5]

In sum, § 926A meets the three factors of *Blessing* and thus creates a private right of action under 42 U.S.C. § 1983.

B.

---

[4]    *Torraco* concluded that § 926A did not meet the second *Blessing* factor.  *Torraco* was wrongly decided for the reasons set forth in part B, *infra*.

[5]    In light of the resolution of the second factor, *Torraco* did "not discuss the third factor."  615 F.3d at 139.

-8-

*Gonzaga University v. Doe*

Passing "the *Blessing* Test may only indicate that plaintiffs 'fall[] within the general zone of interest that the statute is intended to protect,'" so the court must next determine "whether Congress used 'rights-creating terms.'" *Sabree v. Richman*, 367 F.3d at 189 (quoting *Gonzaga Univ.*, 536 U.S. at 283-84) (alteration in source). A statute creates a § 1983 actionable "right" when it "impart[s] an 'individual entitlement,' and ha[s] an 'unmistakable focus on the benefitted class.'" *Id.* at 187 (quoting *Gonzaga Univ.*, 536 U.S. at 287). Analysis of *Gonzaga University* and its progeny shows that FOPA establishes an actionable "right" because: FOPA plainly confers an "entitle[ment]" to individual lawful gun owners; FOPA's protection focuses on those beneficiaries, rather than on other persons or entities; and, Congress has not provided some other remedial scheme to address a FOPA violation.

In *Gonzaga University*, the Court concluded that a student could not sue a private university for damages under § 1983 to enforce provisions of the Family Educational Rights and Privacy Act of 1974 ("FERPA" or Act), 88 Stat. 571, 20 U.S.C. § 1232g. FERPA prohibits the federal funding of any educational institutions that have a policy or practice of releasing education records to unauthorized persons. 536 U.S. at 278-79. Although the Court found that this legal requirement "benefitted" the plaintiff student, the Court concluded that such an action was "foreclosed

-9-

because the relevant provisions of FERPA create no personal rights to enforce" under § 1983.  536 U.S. at 276-277.  There were "no personal rights to enforce" under § 1983 because the FERPA provisions at issue "entirely lack the sort of 'rights-creating' language critical to showing the requisite congressional intent to create new rights."  536 U.S. at 287.  The Court focused on two specific attributes of FERPA:  first, it did not focus on the student beneficiaries, but concerned federal funding and the regulation of financial institutions; and second, Congress had already established a different mechanism for addressing violations.  The Court explained that "FERPA's provisions speak only to the Secretary of Education, directing that '[n]o funds shall be made available' to any 'educational agency or institution' which has a prohibited 'policy or practice.'" *Id.*  (quoting 20 U.S.C. § 1232g(b)(1)).  Further, FERPA's nondisclosure provisions "speak only in terms of institutional policy and practice, not individual instances of disclosure."  536 U.S. at 288.  In addition, "Congress expressly authorized the Secretary of Education to '*deal with violations*' of the Act, § 1232g(f) (emphasis added), and required the Secretary to 'establish or designate [a] review board' for investigating and adjudicating such violations, § 1232g(g)."  536 U.S. at 289 (quoting 20 U.S.C. § 1232g(f)) (alteration in source).  The Court concluded:

> FERPA's nondisclosure provisions contain no rights-creating language, they have an aggregate, not

> individual, focus, and they serve primarily to direct the
> Secretary of Education's distribution of public funds to
> educational institutions.   They therefore create no
> rights enforceable under § 1983.

536 U.S. at 290.

In stark contrast to FERPA, FOPA contains *only* rights-creating language ("any person . . . shall be entitled") which has an individual focus.  Thus, *Gonzaga Univ.* compels the conclusion that FOPA creates a right enforceable under § 1983.

C.
*Rancho Palos Verdes v. Abrams*

*Rancho Palos Verdes v. Abrams*, 544 U.S. 113 (2005), similarly demonstrates that FOPA creates a right enforceable under § 1983. *Rancho Palos Verdes* focused on the fact that Congress had provided a separate remedy for violations, framing the issue as whether "Congress meant the judicial remedy expressly authorized by § 332(c)(7) to coexist with an alternative remedy available in a § 1983 action."  *Id.* at 120-121.  The Court concluded that the remedies did not coexist.  The Court reasoned that "the existence of a more restrictive private remedy" had often been "the dividing line between those cases in which we have held that an action would lie under § 1983 and those in which we have held that it would not."  *Id.* at 121.  The Court observed that:

> in *all* of the cases in which we have held that § 1983 *is*
> available for violation of a federal statute, we
> have emphasized that the statute at issue, in contrast to
> those in *Sea Clammers* and *Smith,* *did not* provide a
> private judicial remedy (or, in most of the cases, even
> a private administrative remedy) for the rights violated.

-11-

*Id.* at 121.

Accordingly, *Rancho Palos Verdes* makes clear that the absence of a remedy in § 926A strongly suggests that there is a remedy under § 1983 in that "the dividing line between those cases" in which the Court has held that an action would lie under § 1983 and those in which it held that it would not was the "existence of a more restrictive private remedy for statutory violations . . . ." 544 U.S. at 121.  See also *A.W. v. Jersey City Public Schools*, 486 F.3d 791, 801-02 (3d Cir. 2007).

These principles show that FOPA creates a "right" that is subject to suit under § 1983.  To begin with, FOPA's language speaks *only* to the individuals it benefits – specifically, to "any person" who legally owns a firearm and who seeks to transport it across state lines to another place where lawful.  *See* 18 U.S.C. § 926A.  FOPA does not concern institutional policies, nor does FOPA address the conduct of other persons.  *Cf. Newark Parents Ass'n v. Newark Public Schools*, 547 F.3d at 210 ("No Child Left Behind" Act provisions did not create a § 1983 "right" under *Gonzaga University* because they concerned institutional policies and did not have a "primary focus" on benefited students and parents, but rather, on schools), with *Sabree v. Richman*, 367 F.3d at 190 (Medicaid Act created a § 1983 "right" because it provided that state plans "must provide" specified services to "all eligible individuals" and "do not focus on" the regulated entity).

-12-

Congress meant what it said: "any person" who legally owns a firearm in one state and complies with FOPA's requirements is "*entitled*" to transport that gun to another state where it is also legal. FOPA focuses on the conduct of individual law-abiding gun owners, it confers a binding entitlement, and it plainly establishes a federal legal "right."

D.

*Torraco* Was Wrongly Decided

1) *Torraco* held that § 926A did not create a private right of action under 42 U.S.C. § 1983 because § 926A did not meet the second *Blessing* factor, *i.e.*, § 926A was purportedly so "vague and amorphous" that its "enforcement wzould strain judicial competence."  In so holding, *Torraco* did not properly apply *Blessing*.

*Torraco* stated:

> Appellants are correct that the language of the second factor focuses on whether the rights conferred would be difficult for the *judiciary*, as opposed to law enforcement officers, to identify and enforce. This "rigid and superficial" application of the *Blessing* factors, however, is insufficient. *See Wright* v. *Roanoke Redevelopment and Hous. Auth.*, 479 U.S. 418, 432 (1987)(stating that the "the benefits Congress intended to confer on tenants are sufficiently specific and definite to qualify as enforceable rights" which were not "beyond the competence of the judiciary to enforce")(emphasis added). These practical problems, and the accompanying possibility that the fear of increased liability could chill enforcement of firearm regulations, undermine the argument that Congress granted a benefit that was intended to be a individual right.

-13-

615 F.3d at 137.[6]

Nothing in *Blessing*, or its predecessors or progeny, suggest that the second factor could be recast to take account of purported "practical problems" or the "chill[ing of the] enforcement of firearm regulations."   Indeed, in giving the second factor a purported flexible application, *Torraco* reflects a fundamental misunderstanding of the underlying purpose of the second factor.

*Blessing* reiterated the Court's established rule that, "to seek redress through § 1983," "a plaintiff must assert the violation of a federal *right*, not merely a violation of federal *law.*" 520 U.S. at 340.   The Court thus developed what ultimately became the three *Blessing* factors to determine if a federal law created a privately enforceable right.   *Wright* was the first case to articulate the test to determine if a "right" was created.   In *Wright*, the Respondent asserted that the regulation defining the statutory concept of "rent," which included a "reasonable" allowance for utilities, was "too vague and amorphous" to confer on tenants an enforceable "right" within the meaning of § 1983. *Wright*, 479 U.S. at 431.   The Court, however, found that the regulations "specifically set out guidelines that the PHAs were to follow in establishing utility allowances . . . ."   479 U.S. at

---

[6]   The concurring opinion found that "Congress created an individual federal right by enacting this provision" (615 F.3d at 141), although "violations of this right are not redressable in a private action pursuant to § 1983."  615 F.3d at 142 (Wesley, J., concurring).  The latter conclusion is addressed below.

431-432.  Thus, "the benefits Congress intended to confer" were:

> sufficiently specific and definite to qualify as
> enforceable rights under *Pennhurst* and § 1983, rights
> that are not, as respondent suggests, beyond the
> competence of the judiciary to enforce.

479 U.S. at 432.

*Golden State Transit Corp. v. Los Angeles,* 493 U.S. 103 (1989), citing *Wright*, stated that the "interest the plaintiff asserts must not be 'too vague and amorphous' to be 'beyond the competence of the judiciary to enforce.'" 493 U.S. at 106. *Golden State* also stated that "the availability of the § 1983 remedy turns on whether the statute, by its terms or as interpreted, creates obligations 'sufficiently specific and definite' to be within 'the competence of the judiciary to enforce . . . .'" 493 U.S. at 108 (quoting *Wright*, 479 U.S. at 432).

Accordingly, the Court's references to the "competence of the judiciary" reflect the Court's concern not over who may actually apply the law, but whether there is a clearly defined "right" established by federal statute. As a result, the only legitimate issue under the second *Blessing* factor is whether the right, as set forth in the statutory language, is sufficiently specific and definite. Section 926A meets this test as the right it creates -- to transport a firearm for any lawful purpose from any place where the person may lawfully possess and carry such firearm to any other place where he may lawfully possess and carry such firearm -- is

-15-

specific and definite, not vague and amorphous.[7]

That there may be "practical problems" with the application of § 926A, or that it might "chill enforcement of firearm regulations," does not cloud the language of § 926A and suggest that it did not create an individual right.[8]  In view of the fact that the "key to the inquiry is the intent of the Legislature" (*Middlesex Cty. Sewerage Auth. v. Sea Clammers,* 453 U.S. 1, 13 (1981)), it is notable that *Torraco* did not point to any traditional tool of statutory construction that supported its conclusion that "practical problems" or "chill[ing] enforcement of firearm regulations" could "undermine the argument that Congress granted a benefit that was intended to be a individual right." Indeed, *Torraco*'s reasoning conflicts with the hoary rule that, where "resolution of a question of federal law turns on a statute and the intention of Congress, we look first to the statutory language and then to the legislative history if the statutory language is unclear" (*Blum v. Stenson,* 465 U.S. 886, 896 (1984)) in that *Torraco* points to no language in § 926A, or to any legislative history, that indicates that Congress did not intend for § 926A to

---

[7]  The concurrence aptly noted that, had the plaintiff's claim proceeded to trial, the district court would have had "to simply apply Chapter 44 of Title 18 and several states' firearms laws to the facts" of the case.  615 F.3d at 145.

[8]  That § 926A might "chill enforcement of firearm regulations" is also not a reasonable basis for finding that it does not create an enforceable right since its very purpose was to limit enforcement of state and local law.

create an enforceable right because of "practical problems" or because it might "chill enforcement of firearm regulations . . . ." Moreover, *Torraco* cited no case which held that a statute may be interpreted, and the intent of Congress divined from, the fact that there are purportedly "practical problems" with the enforcement of the statute, or that it might "chill enforcement of firearm regulations"; the law in fact is to the contrary. As stated in another case involving federal preemption of New York law, *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85 (1983):

> We recognize that our interpretation of § 514(d) as requiring partial pre-emption of state fair employment laws may cause certain *practical problems*. . . . To the extent that our construction of ERISA causes any problems in the administration of state fair employment laws, *those problems are the result of congressional choice and should be addressed by congressional action.*

463 U.S. at 105-106 (emphasis added).

The same is true here: if there are "practical problems" with the enforcement of § 926A, or it might unreasonably "chill enforcement of firearm regulations," they are the result of congressional choice and should be addressed by congressional action; § 926A should not be eviscerated by resort to an interpretation which has no foundation in Supreme Court law and which renders it a nullity.[9]

---

[9]   The concurrence correctly observed that, "[i]f Congress has created a right that strains state actors' resources or competence to enforce, the remedy lies with the political branches."  615 F.3d at 145 (Wesley, J., concurring).

What *Torraco* was saying in effect is that § 926A is unwise policy because of the burden it places on law enforcement.  But courts "are not at liberty to second-guess congressional determinations and policy judgments of this order, however debatable or arguably unwise they may be." *Eldred v. Ashcroft,* 537 U.S. 186, 208 (2003).  Moreover, Congress was certainly aware that there were 50 states with different degrees of firearms laws, that there were localities with firearms laws, and that law enforcement would have to determine those laws to apply § 926A.  Indeed, "Congress is presumed to know the law . . . ." *Vimar Seguros Y Reaseguros, S. A. v. M/V Sky Reefer,* 515 U.S. 528, 554 (1995).  Yet, despite that knowledge, Congress enacted § 926A because, as it expressed in its "Congressional Findings," the:

> rights of citizens . . . to keep and bear arms under the second amendment to the United States Constitution . . . require additional legislation to correct existing firearms statutes and enforcement policies . . . .

Firearms Owners' Protection Act, Pub.L. No. 99-308, § 1(b), 100 Stat. 449, 449 (1986).[10]

This court should not attempt to usurp Congress' policy choice by holding that the purported difficulty in applying § 926A precludes a private cause of action.

----

[10]   Congress' finding was underscored by the Supreme Court's decision in *McDonald* v. *City of Chicago, Illinois*, 561 U.S. 3025, 130 S.Ct. 3020 (2010), holding that the right to keep and bear arms was a fundamental, individual right and applied to the states through the Fourteenth Amendment.

2) *Torraco* stated:

> We find no evidence either in the text or structure of Section 926A that would indicate that Congress intended that police officers tasked with enforcing state gun laws should be liable for damages when they fail to correctly apply Section 926A. *See Gonzaga University* [v. *Doe*], 536 U.S. [273] at 286 [(2002)] ("[W]here the text and structure of a statute provide no indication that Congress intends to create new individual rights, there is no basis for a private suit . . . under § 1983.").

615 F.3d at 137.

*Torraco*'s holding conflicts with *Gonzaga University* since the quoted language speaks to determining whether Congress has created an *enforceable right*, not whether there is a *remedy* for violation of that right.  With respect to the existence of remedy, *Gonzaga University* held:

> Plaintiffs suing under § 1983 do not have the burden of showing an intent to create a private remedy because § 1983 generally supplies a remedy for the vindication of rights secured by federal statutes. . . .  Once a plaintiff demonstrates that a statute confers an individual right, the right is presumptively enforceable by § 1983.

536 U.S. at 284.

The Court further explained:

> The State may rebut this presumption by showing that Congress "specifically foreclosed a remedy under § 1983." (Citation omitted).  The State's burden is to demonstrate that Congress shut the door to private enforcement either expressly, through "specific evidence from the statute itself," (citation omitted) or "impliedly, by creating a comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983," *Blessing v. Freestone*, 520 U.S. 329, 341 (1997).  See also *Middlesex County Sewerage Authority v. National Sea Clammers Assn.*, 453 U.S. 1, 20 (1981).

-19-

536 U.S. at 284, n.4.[11]

Thus, there is no requirement that § 926A "indicate that Congress intended that police officers tasked with enforcing state gun laws should be liable for damages." Rather, once it is shown that § 926A confers an individual right, "the right is presumptively enforceable by § 1983." It is then the burden of the defendant to show that Congress "specifically foreclosed a remedy under § 1983"; the defendant may do so either from express language in § 926A itself, or impliedly from the existence of a comprehensive enforcement scheme related directly to § 926A. Defendants here have not shown that Congress specifically foreclosed a remedy under § 1983, or that there is a comprehensive enforcement scheme related directly to § 926A. Similarly, *Torraco* neither showed that Congress "specifically foreclosed a remedy under § 1983" or that there is a comprehensive enforcement scheme related directly to § 926A. Indeed, *Torraco* has done the opposite; presuming that § 1983 does *not* provide a remedy unless that remedy is apparent in the "text or structure" of § 926A.

The *Torraco* concurrence also conflicts with *Gonzaga University* in concluding that Congress "impliedly foreclosed § 1983 claims

---

[11]   *Wright* emphasized the presumptively enforceable nature of § 1983: "We do not lightly conclude that Congress intended to preclude reliance on § 1983 as a remedy" for the deprivation of a federally secured right.   479 U.S. at 423-424 (Citation omitted). See also *Golden State Transit Corp., supra,* 493 U.S. at 105 ("the coverage of [§ 1983] must be broadly construed.").

-20-

based on alleged violations" of § 926A (615 F.3d at 142) (Wesley, J., concurring) because § 926A merely "creates a 'negative' right to avoid convictions and related sanctions" (615 F.3d at 146) (Wesley, J., concurring) in that it only "provides a right to protection against a conviction on state-law weapon-possession charges."   615 F.3d at 147 (Wesley, J., concurring).   The concurrence reaches this "'negative' right" conclusion purportedly based on the text and the legislative history.  As to the text, the concurrence does not point to any text which supports this conclusion.   On the contrary, the express language of § 926A creates an affirmative entitlement (a person "shall be entitled" to transport a firearm), which was created pursuant to Congress' power under the under the Supremacy Clause (U.S. Const., Art. VI, cl. 2) to preempt state law.

    As to legislative history, consideration of the legislative history is not appropriate because there is no ambiguity in the text.  See *Blum v. Stenson, supra*, 465 U.S. at 896 ("we look first to the statutory language and then to the legislative history *if the statutory language is unclear*")(emphasis added).   Further, while the concurrence points to statements by Representative McCollum,[12] Senator Thurman, and others (615 F.3d at 147) (Wesley, J., concurring), the statements reflect merely the views of those

---

[12]    The Port Authority also relies on a statement by Representative McCollum that § 926A provides a "safe harbor." Brief 4.

few members of Congress; there is nothing suggesting that every member of Congress, or even a majority, agreed with that view.  See *e.g.*, *Barnhart v. Sigmon Coal Co.,* 534 U.S. 438, 457 (2002)("We see no reason to give greater weight to the views of two Senators than to the collective votes of both Houses, which are memorialized in the unambiguous statutory text.").  In addition, the fact that § 926A provides a "safe harbor" from state prosecution does not preclude the existence of a remedy under § 1983.  Indeed, *Gonzaga University* made clear that there is a presumption that an individual right is enforceable under § 1983, which may be rebutted by showing that Congress "impliedly . . . creat[ed] a comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983."  536 U.S. at 284, n.4.  Nothing in *Gonzaga University* suggested that the fact that a federal preemptive statute provides a "safe harbor" from state prosecution precludes the existence of remedy under § 1983.

Apparently recognizing that *Gonzaga University* requires that, to rebut the presumption that an individual right is enforceable under § 1983, there must be a showing that § 926A "impliedly . . . creat[ed] a comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983," the *Torraco* concurrence finds that "[r]ecourse to the courts" is "the first step of the remedial scheme for addressing potential violations of § 926A" (615 F.3d at 150) (Wesley, J., concurring), in particular, "direct

appeals challenging the criminal conviction in question and habeas corpus proceedings in both state and federal courts."  615 F.3d at 150 (Wesley, J., concurring).  The existence of these processes is not, however, the kind of "comprehensive enforcement scheme" referred to in *Gonzaga University*.  First, as the seminal case on this question, *Middlesex Cty. Sewerage Auth. v. Sea Clammers, supra*, noted: "When the remedial devices provided *in a particular Act* are sufficiently comprehensive, *they* may suffice to demonstrate congressional intent to preclude the remedy of suits under § 1983." 453 U.S. at 20 (emphasis added).  Direct appeals and habeas corpus proceedings are not remedial devices provided in § 926A.  Second, direct appeals and habeas corpus proceedings are not comparable to the remedial devices in the three cases where the Court found that § 1983 was not available for violation of a federal right (*Sea Clammers, Smith v. Robinson,* 468 U.S. 992 (1984), and *Rancho Palos Verdes*) because the "statute at issue" in those cases "provide[d] a private judicial remedy . . . ."  *Rancho Palos Verdes,* 544 U.S. at 121.  Third, direct appeals and habeas corpus proceedings are not "unusually elaborate enforcement provisions, conferring authority to sue for this purpose both on government officials and private citizens" (*Sea Clammers*, 453 U.S. at 13) nor are they "elaborate procedural mechanism to protect the rights of handicapped children" (*Smith v. Robinson,* 468 U.S. at 1011).

Because direct appeals and habeas corpus proceedings are not

a "comprehensive enforcement scheme," their existence does not preclude a remedy under § 1983 for violation of the right created by § 926A.

In support of *Torraco*'s disregard of *Blessing* and its predecessors and progeny, *Torraco* cites (615 F.3d at 136) *Wachovia Bank, N.A. v. Burke*, 414 F.3d 305 (2d Cir. 2005):

> We understand the *Gonzaga University* majority and concurring opinions to mean, at least, that courts should not find a federal right based on a rigid or superficial application of the *Blessing* factors where other considerations show that *Congress did not intend* to create federal rights actionable under § 1983.

414 F.3d at 322 (emphasis added).

Just prior to this statement, *Wachovia Bank* had reiterated the holding of *Gonzaga University* that, "where the text and structure of a statute provide no indication that Congress intends to create new individual rights, there is no basis for a private suit . . . under § 1983." 536 U.S. at 286. Accordingly, while *Wachovia Bank* rejected a "rigid or superficial application of the *Blessing* factors," it nonetheless recognized that Congress' intent was the key and looked to the text and structure of the National Bank Act ("NBA") to determine whether Congress intended to create a new individual right for a national bank. In particular, the court reviewed a series of Supreme Court decisions concerning the role of national banks and stated:

> These cases, which indicate Congress's purpose in enacting the NBA, show that any focus on national banks

-24-

> -- *as relevant to the first Blessing factor* -- does not
> imply the creation of a federal right.  On the contrary,
> Congress created national banks as instruments to foster
> a national banking system.

414 F.3d at 323 (emphasis added).

After evaluating the "structure and history of the [NBA],"
*Wachovia Bank* concluded that "Congress did not intend to provide
national banks with individual rights as private entities."  414
F.3d at 322.  By contrast, in the case at bar, there is nothing in
the structure, history, or text of § 926A which suggests, let alone
conclusively shows, that Congress did not intend that § 926A
created an individual right.[13]

3)  In  support  of  its  contention  that  the  practical
difficulties in applying § 926A compel the conclusion that § 926A
did not create a private cause of action, *Torraco* assets:

> Section 926A is silent as to how a police officer
> encountering an unlicensed person with a firearm is to
> ascertain that this prong of the statute is met, i.e.,
> that said person is not prohibited by the Firearms
> Chapter from transporting the firearm.

615 F.3d at 137.

Section 926A does not, however, need to explain how a police

---

[13]  *Torraco*'s misapplication of *Gonzaga University* is evidenced
by the fact that, while *Torraco* cited *Wachovia Bank, N.A.* to
support its conclusion regarding the *Blessing* factors, *Torraco* also
agreed that § 926A "satisfies the first *Blessing* factor" (615 F.3d
at 137).  Yet *Wachovia Bank, N.A.* concluded that the reason the
National Banking Act did not create an individual right was that
the Act did not meet the first *Blessing* factor ("any focus on
national banks -- as relevant to the first *Blessing* factor -- does
not imply the creation of a federal right," 414 F.3d at 323).

officer determines whether a person is prohibited by federal law
from possessing a firearm because 28 U.S.C. § 534 and 28 C.F.R.
Part 20 establish that police officers have access to criminal
history data from the National Crime Information Center.

4) *Torraco* rejected the appellants' purported argument that
"Section 926A creates a presumption of lawfulness," stating:

> Section 926A does not state that it is creating any such
> presumption - it merely provides that gun owners may
> travel interstate with their guns unloaded and in
> carrying cases, as long as a number of other conditions
> are met - and we decline to read a presumption into the
> statute.

615 F.3d at 139.

In fact, § 926A does not "merely provide[] that gun owners may
travel interstate"; it "entitles" them to transport a firearm
interstate.  That entitlement was created pursuant to Congress'
power under the under the Supremacy Clause (U.S. Const., Art. VI,
cl. 2) to preempt state law.  As an affirmative entitlement,
transportation of a firearm interstate is a lawful act when the
owner can lawfully possess and carry the firearm where the
transportation originated and where the transportation terminates.

Accordingly, if a law enforcement officer discovers that a
person traveling through an interstate facility (such as an
airport) is transporting an unloaded firearm that state law would
otherwise prohibit, but the person presents facts indicating that
he/she is traveling interstate, is not prohibited from firearm
possession and  that the possession and carrying of the firearm is

-26-

lawful both where the transportation originated and where the transportation was to terminate, there would be no probable cause for an arrest. The person could rely on the entitlement afforded by § 926A.

## CONCLUSION

The court should deny Defendants' motion for summary judgment.


                              Respectfully submitted,

                              Association of New Jersey
                              Rifle & Pistol Clubs, Inc.
                              By counsel


                              s/Richard V. Gilbert
                              For the Firm
                              Evan F. Nappen Attorney At Law, P.C.
                              21 Throckmorton Avenue
                              Eatontown, NJ 07724
                              (732) 389-8888
                              (732) 389-8744 (fax)



ON THE BRIEF:

Richard E. Gardiner
Suite 403
3925 Chain Bridge Road
Fairfax, VA 22030
(703) 352-7276
(703) 359-0938 (fax)