**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

ASSOCIATION OF NEW JERSEY RIFLE & PISTOL CLUBS, INC.

     *Plaintiff*,

 v.

PORT AUTHORITY OF NEW YORK & NEW JERSEY, and PORT AUTHORITY POLICE OFFICER SCOTT ERICKSON
     *Defendants*.

Civ. Action No. 06-402 (KSH)

**OPINION**

**Katharine S. Hayden, U.S.D.J.**

  After much litigation, this matter is now before the Court with one plaintiff, the Association of New Jersey Rifle & Pistol Clubs, Inc. ("the Association") asserting one count under 42 U.S.C. § 1983 against the Port Authority of New York and New Jersey and Port Authority Police Officer Scott Erickson (collectively the "Port Authority"). The Association's lawsuit seeks to enjoin enforcement of New Jersey gun regulation statutes. The Port Authority, which has in the past filed motions to dismiss various iterations of the pending third amended complaint, has now filed a motion for summary judgment. The Port Authority argues that the Association's cause of action fails as a matter of law because 18 U.S.C. § 926A of the Firearm Owners Protection Act, on which the Association's claim rests, does not create a federal right enforceable through a civil rights action under 42 U.S.C. § 1983. In its opposition, the Association argues that § 926A confers an affirmative federal right to transport firearms that trumps otherwise valid New Jersey legislation.

1

## I. Factual and Procedural History

### A. *The Parties*

The Association is a non-profit membership organization, incorporated in 1936, which represents both its members and firearm owners in general. (3rd Amend. Compl. ¶ 1.) The Association purposes are "aiding, individually and collectively, member and non-member firearms owners, shooting competitors, hunters, and sportsmen in every way within the Association's powers and supporting and defending people's right to keep and bear arms, including the right of its members and the public to possess, transport, and carry firearms and ammunition." (*Id.*)

The Port Authority was created with the consent of Congress in 1921 by a compact entered into by the states of New Jersey and New York. (*Id.* ¶ 2.) The Port Authority's area of jurisdiction is called the Port District, "a region within a radius of approximately 25 miles of the Statue of Liberty." *Port Authority of New York & New Jersey, Overview of Facilities and Services,* http://www.panynj.gov/about/facilities-services.html. Within this region, the Port Authority builds, operates and maintains airports, bridges, tunnels, ports, bus terminals and the Port Authority Trans-Hudson ("PATH") subway system. *Id.* To facilitate the management of Port Authority's numerous sites, it created its own police force in 1928. *Port Authority of New York & New Jersey, About the Port Authority Police Department,* http://www.panynj.gov/police/about-police.html. The Port Authority Police Department is responsible for, among other things, policing three major airports in the region, including Newark Liberty International Airport in Newark, New Jersey ("Newark airport"). *Id.* Defendant Scott Erickson was at all relevant times a Port Authority Police Officer assigned to patrol Newark airport. (3rd Amend. Compl. ¶ 3.)

### B. *Procedural History*

This case first came before the Court in 2006 when the Association and former co-plaintiff George Revell jointly filed a § 1983 complaint again the Port Authority and Scott Erickson. [D.E. 1.] Revell claimed that the Port Authority and Erickson violated his rights and privileges secured by § 926A when he was arrested by Erickson at Newark airport for possession of a firearm without a license and for possession of hollow point bullets. [*Id.*] The Association sought to enjoin Erickson and the Port Authority from enforcing New Jersey gun laws against non-resident Association members transporting firearms in compliance with § 926A. [*Id.*] The Port Authority filed a motion to dismiss, which the Court granted. [D.E. 39.] In its opinion, the Court concluded that Revell's proper avenue for relief was not a § 1983 claim based upon a violation of his purported rights under § 926A, but rather a § 1983 suit predicated on the violation of his Fourth Amendment rights. [D.E. 38.] The Court permitted Revell to file an amended complaint, but dismissed the Association's claim entirely, holding that it did not meet the Article III injury in fact requirement necessary to establish standing because it had not demonstrated a sufficient likelihood that its members would be injured in the future. [*Id.*]

The Association filed a motion to alter the judgment to grant leave to amend its complaint pursuant to Fed. R. Civ. P. 59(e). [D.E.45-1.] The Court denied the motion. [D.E. 53.] On appeal, the Third Circuit reversed and remanded to permit the Association to amend its complaint to allege facts sufficient to demonstrate standing. *Revell v. Port Auth. of N.Y. & N.J.,* 321 Fed. App'x 113 (3d Cir. 2009). After a second amended complaint was filed, the Port Authority moved to dismiss. [D.E. 123.] On March 17, 2010, this Court granted the motion and dismissed the complaint because it failed to meet the heightened pleading standard set forth in *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007) and *Ashcroft v. Iqbal,* 556 U.S. 662 (2009).

The Association sought leave to amend its complaint pursuant to Fed. R. Civ. P. 59(e), which was granted absent opposition from the Port Authority. After a third amended complaint was filed, the Port Authority moved for summary judgment. [D.E. 158.]

### C. The Third Amended Complaint

As indicated at the beginning of this opinion, in the pending complaint, the Association, asserting a federal right under 18 U.S.C. § 926A, seeks injunctive relief to prevent the Port Authority from enforcing specific gun laws, N.J.S. § 2C:39-5(b) and § 2C:39-3(f), against non-resident Association members who wish to transport firearms and ammunition through New Jersey pursuant to § 926A. (3rd Amend. Compl. ¶ 17.) The complaint alleges that there are non-resident Association members who want to travel through Newark airport and other Port Authority sites with their firearms but refrain from doing so "at great inconvenience, because of their fear of being arrested and/or detained and prosecuted pursuant to N.J.S. § 2C:39-5(b) and N.J.S. § 2C:39-3(f), and other State statutes." (*Id.* at ¶¶ 12, 14.) According to the complaint

> 13) . . . it is the policy and/or practice of the Port Authority, under color of State statutes, including New Jersey statutes, to arrest and/or otherwise detain travelers in possession of firearms even though such possession is protected by 19 U.S.C. § 926A. See, for example, attached Affidavit of Michael S. Payne.
>
> . . .
>
> 15) As a result of the policy and/or practice of the Port Authority to disregard 18 U.S.C. § 926A, non-resident members of the Association, including William A. Bachenberg, John Cushman, and Thomas King, among others, are coerced and intimidated into taking one of two courses of action: (i) When traveling with firearms lawfully pursuant to 18 U.S.C. § 926A, they avoid Newark Airport and other Port Authority sites to avoid unlawful arrest and/or detention by the Port Authority, even though they have a right under 18 U.S.C. § 926A to travel unmolested through such locations with firearms; or (ii) alternatively, they refrain from possessing firearms when traveling through Newark Airport and other Port Authority sites, even though they have the right under 18 U.S.C. § 926A to possess firearms during such travel.
>
> 16) Under color of N.J.S. § 2C:39-5(b) and N.J.S. § 2C:39-3(f), and other State statutes, Defendants Port Authority of New York and New Jersey and Scott

4

>Erickson are depriving non-resident members of the Association, including William A. Bachenberg, John Cushman, and Thomas King, among others, of rights, privileges, or immunities secured by 18 U.S.C. § 926A.

(*Id.* at ¶¶ 13, 15–16.)

## II.   Standard of Review

Summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  A factual dispute is genuine if a reasonable jury could find in favor of the nonmoving party and it is material only if it bears on an essential element of the plaintiff's claim.  *Fakete v. Aetna, Inc.,* 308 F.3d 335, 337 (3d Cir. 2002).  The role of the court is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986).  If there are no issues that require a trial, then judgment as a matter of law is appropriate.  *Id.* at 251–52.

Here, the parties do not dispute the facts outlined above. "This motion presents a pure question of statutory interpretation and, accordingly, is ripe for summary adjudication." *Singer v. Landrover No. Am., Inc.,* 955 F. Supp. 359, 360 (D.N.J. 1997) (citing N*ation Wide, Inc. v. Scullin*, 256 F. Supp. 929, 932 (D.N.J. 1966), *aff'd*, 377 F.2d 554 (3d Cir.1967)).

## III.   Analysis

Port Authority argues that § 926A does not create a federal right that is enforceable through a § 1983 cause of action.

Section 1983 is used to impose civil liability on anyone who, acting under color of state law, deprives a person "of any rights, privileges, or immunities secured by the Constitution and

5

laws." To seek redress through § 1983, however, "a plaintiff must assert the violation of a federal *right*, not merely a violation of federal *law*." *Blessing v. Freestone*, 520 U.S. 329, 340 (1997) (citing Golden *State Transit Corp. v. Los Angeles*, 493 U.S. 103, 106 (1989)). To determine whether a statute creates a federal right the court must engage in a two part inquiry. First, the court evaluates the three factors identified in *Blessing* to determine whether "the statute creates 'enforceable rights, privileges, or immunities within the meaning of § 1983.'" *Pa. Pharmacists Ass'n v. Houstoun,* 283 F.3d 531, 535 (3d Cir. 2002) (quoting *Wright v. Roanoke Redevelopment Housing Auth.,* 479 U.S. 418, 423 (1987)). The three *Blessing* factors are: 1) "Congress must have intended that the provision in question benefit the plaintiff"; 2) "the plaintiff must demonstrate that the right assertedly protected by the statute is not so 'vague and amorphous' that its enforcement would strain judicial competence"; and 3) "the statute must unambiguously impose a binding obligation on the States . . . , the provision giving rise to the asserted right must be couched in mandatory rather than precatory terms." 520 U.S. at 340–41 (citations omitted).

If a plaintiff successfully demonstrates that the statute creates an individual right, a rebuttable presumption arises that the right is enforceable under § 1983. *Blessing,* 520 U.S. at 341; *Three Rivers Ctr. for Indep. Living v. Housing Auth. of City of Pittsburgh,* 382 F.3d 412, 422 (3d Cir. 2004). The presumption of enforceability will be rebutted, however, by a showing that Congress "specifically foreclosed a remedy under § 1983." *Smith v. Robinson,* 468 U.S. 992 (1984); *Blessing*, 520 U.S. at 341. Therefore, the second part of the inquiry is whether Congress foreclosed a § 1983 remedy expressly, in the statute itself, "or impliedly, by creating a comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983." *Blessing,* 520 U.S. at 341. The focus of this inquiry is congressional intent. *Id.*

6

The Association's lawsuit is premised on the existence of an enforceable federal right conferred on their members by 18 U.S.C. § 926A. That statute reads as follows:

> Notwithstanding any other provision of any law or any rule or regulation of a State or any political subdivision thereof, any person who is not otherwise prohibited by this chapter [18 U.S.C. § 921 et seq.] from transporting, shipping, or receiving a firearm shall be entitled to transport a firearm for any lawful purpose from any place where he may lawfully possess and carry such firearm to any other place where he may lawfully possess and carry such firearm if, during such transportation the firearm is unloaded, and neither the firearm nor any ammunition being transported is readily accessible or is directly accessible from the passenger compartment of such transporting vehicle: Provided, That in the case of a vehicle without a compartment separate from the driver's compartment the firearm or ammunition shall be contained in a locked container other than the glove compartment or console.

18 U.S.C. § 926A.

When it affirmed this Court's dismissal of former individual plaintiff George Revell, the Third Circuit found that it was "clear that Revell did not comply with § 926A" and, therefore, the opinion would "not address the more difficult question of whether, if he had complied with § 926A, Revell would have been able to pursue a § 1983 claim based upon § 926A. *Revell v. Port. Auth. of N.Y. & N.J.,* 598 F.3d 128, 136 (3d Cir. 2010). Since then, in a case brought against the Port Authority in the Eastern District of New York, the Second Circuit ruled against gun owners seeking redress under § 1983 based on protections in § 926A. *Torraco v. Port Auth. of N.Y. & N.J.,* 615 F.3d 129 (2d Cir. 2010). The majority in *Torraco* held that § 926A did not create a federal right at all, while the concurrence found that the statute created a federal right but that Congress foreclosed enforcement through § 1983. *See id.* This Court in its earlier rulings employed reasoning similar to that in the concurrence, and in deciding this issue, has found Judge Wesley's concurring opinion persuasive on the contours of the right created by § 926A and on the availability of a remedy under § 1983.

### A. *Application of the* Blessing *Factors*

Repeating the *Blessing* factors, which must govern the analysis: 1) "Congress must have intended that the provision in question benefit the plaintiff"; 2) "the plaintiff must demonstrate that the right assertedly protected by the statute is not so 'vague and amorphous' that its enforcement would strain judicial competence"; and 3) "the statute must unambiguously impose a binding obligation on the States[;] the provision giving rise to the asserted right must be couched in mandatory rather than precatory terms." 520 U.S. at 340–41 (citations omitted).

Section 926A easily meets the first *Blessing* factor. The statute provides an "entitlement" to "any person" who transports a firearm in accordance with the statutory requirements, and thus provides a benefit to Association members who wish to transport lawfully owned firearms in accordance with § 926A. The third factor is also easily met by the statute's terms. Section 926A states that a person is "entitled to transport a firearm for any lawful purpose from any place where he may lawfully possess and carry such firearm to any other place where he may lawfully possess and carry such firearm," "[n]otwithstanding any other provision of any law or any rule or regulation of a State or any political subdivision." The language is "couched in mandatory" terms and "unambiguously impose[s] a binding obligation on the States." *Blessing,* 520 U.S. at 341.

The second factor is not met if § 926A is so "vague and amorphous" that enforcing it would put a strain on the judiciary. Port Authority, which, understandably, relies on *Torraco,* argues that the Court should adopt the majority view, which held that the numerous practical problems that enforcing § 926A would present to law enforcement officials demonstrate that the statute is not specific and definite enough to create an enforceable statutory right. (Def. Br. 3–6); *Torraco*, 615 F.3d at 137. The *Torraco* majority acknowledged that, in *Blessing*, the Supreme

8

Court couched the factor in terms of *judicial* competence, but the majority rejected applying that factor in a superficial, rigid manner. *Torraco*, 615 F.3d at 137. It concluded that practical problems in the application of the statute, and the "accompanying possibility that the fear of increased liability could chill enforcement of firearm regulations, undermine the argument that Congress granted a benefit that was intended to be a [sic] individual right." *Id.*

> In authorizing interstate transport of firearms "for any lawful purpose from any place where [a traveler] may lawfully possess and carry such firearm," [§ 926A] offers no standard by which an officer can determine whether the interstate transport is lawful. It would require a local officer, faced with clear evidence of a gun carried in violation under local law, to know the law of all 50 states and their localities to evaluate whether firearms possession in the departure and destination states is lawful and thus preempts local law, an unworkable requirement.

*Id.* (quoting 18 U.S.C. § 926A).

In contrast, the concurring opinion in *Torraco* declined to broadly interpret the second *Blessing* factor and concluded that § 926A meets it. *Torraco,* 615 F.3d at 145 (Wesley, J., concurring). As Judge Wesley noted, "[i]t cannot be a defense to a § 1983 claim for a state actor to appear in court and assert that, because a federal right is difficult to enforce or apply, it is no right at all." *Id*. *See also, Eldred v. Ashcroft,* 537 U.S. 186, 208 (2003) (Courts "are not at liberty to second-guess congressional determinations and policy judgments . . . however debatable or arguably unwise they may be."). Thus, turning to the question of whether a court has the competence to determine if the purported right at issue here has been violated, the concurrence concluded that any "court charged with such a task, would be capable of making those legal determinations." *Torraco,* 615 F.3d at 145.

This Court agrees that a judge has the competence to apply the relevant law to the facts to discern, for example, whether: 1) the firearm was lawfully possessed in the jurisdiction where the individual traveled from; 2) the firearm would be lawfully possessed in the jurisdiction where the

9

individual intended to travel to; 3) the firearm was being transported for a lawful purpose; and 4) the firearm was being transported in accordance with the carrying requirements of § 926A. The language of the statute is not vague; if a court concludes that the § 926A statutory requirements are met, the traveler is "entitled" to transport his or her firearm without being subjected to criminal liability for violating otherwise constitutional firearm laws and regulations in pass-through states.

Therefore, this Court concludes that the three *Blessing* factors are met. Section 926A is unambiguous in creating a federal right.

### B. *The parameters of the right created by §926A*

As a predicate to the second step in the inquiry, whether Congress has foreclosed a § 1983 remedy, the Court must define the federal right created by § 926A and discern whether it tracks the right the Association asserts. *See Blessing*, 520 U.S. at 342–46.

The Third Amended Complaint states in pertinent part:

> 10) 18 U.S.C. § 926A secures the right and entitlement of, among other persons, non-resident members of the Association to travel with their firearms from their State of origin, through New Jersey, and ending in their State of destination, even though New Jersey statutes purport to prohibit possession of such firearms.
> . . .
> 16) . . . [non-resident members] have a right under 18 U.S.C. § 926A to travel unmolested through [Newark Airport and other Port Authority sites] with firearms . . . they have the right under 18 U.S.C. § 926A to possess firearms during such travel.

(3rd Amend. Compl. ¶¶ 10, 16.)

This application of the federal law to the Association's members' activity is necessarily a very broad interpretation of § 926A. The Association is claiming that § 926A gives its members the right to possess firearms during their travel through Newark Airport and gives them the right to travel unmolested through Port Authority sites. As such, according to the Association § 926A

10

creates an affirmative right to travel with firearms, giving rise to a presumption that the transportation of firearms is lawful. (3rd Amend. Compl. ¶ 10, 16; Def.'s Br. 26–27.) In its opposition brief the Association asserts that "[a]s an affirmative entitlement, transportation of a firearm interstate is a lawful act when the owner can lawfully possess and carry the firearm where the transportation originated and where the transportation terminates." (Def.'s Br. 26.)

Nothing in the language of § 926A creates this presumption of lawfulness. The *Torraco* plaintiffs asserted the same interpretation of § 926A and both the majority and the concurrence rejected it. The majority noted that to interpret the statute as creating an affirmative entitlement, giving rise to a presumption of lawful gun possession, would suggest that "officers encountering an individual checking a gun at the airport in a state that does not permit unlicensed gun possession should not even inquire as to whether the possession is lawful so long as the individual complied with the 'carrying case' and 'unload' requirements." *Torraco,* 615 F.3d at 139. The concurrence added

> the text of § 926A does not create an individual right to transport a firearm at any time of the transporter's choosing, free from regulatory investigation or delays. Nor . . . does the statute require local law enforcement to apply a "presumption" that an individual's possession of a firearm is lawful, notwithstanding the lack of a permit from the jurisdiction in question or some other form of proof.

*Id.* at 146. Multiple statutory prerequisites must be met before an individual transporting a gun can invoke the protection of § 926A, none of which is presumed satisfied by the statutory language.

The heart of Judge Wesley's concurring opinion is his conclusion that § 926A actually creates not an affirmative but rather a *negative* right, which he defined as the right "to avoid convictions and related sanctions in pass-through jurisdictions between the origin and the destination of a firearm transfer." *Id.* This Court agrees. The term "negative right" is widely

11

understood to encompass those rights and protections that serve as a shield to government intrusion. *See e.g., Lofton v. Sec'y of Dept. of Children and Family Servs.*, 358 F.3d 804, 815 (11th Cir. 2004) ("A negative right to be free of governmental interference in an already existing familial relationship does not translate into an affirmative right to create an entirely new family unit out of whole cloth." (internal quotations omitted)); *In re Majewski*, 310 F.3d 653, 662 (9th Cir. 2002) ("By banning particular conduct, it is true that the statutes discussed above vest individuals with 'negative rights'—the right to be free from unlawful activity like unfair labor practices."); *White v. Johnson*, 180 F.3d 648, 654 (5th Cir. 1999) ("But the right to appeal is a positive right that must be affirmatively exercised, rather than a negative right to be used as a shield against government intrusion." (internal quotations omitted)); *Toledo Area AFL-CIO Council v. Pizza*, 154 F.3d 307, 319 (6th Cir. 1998) ("[T]he First Amendment only protects individuals 'negative' rights to be free from government action and does not create 'positive' rights-requirements that the government act." (internal quotations omitted)); *Alston v. Redman*, 34 F.3d 1237, 1247 (3d Cir. 1994) ("The right of free speech, the right to be free from unreasonable searches and seizures, the right to be free from double jeopardy, the right to due process under the Fifth Amendment, all of these are framed as prohibitions on state conduct, rather than as commandments for state action.").

In creating a negative right, § 926A created one that is narrow and circumscribed. Before an individual may invoke its protection, Judge Wesley identified five prerequisites in the federal statutory scheme that must be met:

> (1) The firearm transfer must not be "otherwise prohibited" by Chapter 44 of Title 18, which relates to federal firearms offenses;
>
> (2) the "purpose" of the transfer must be "lawful";

> (3) the origin of the transfer must be a "place where [the individual] may lawfully possess and carry such firearm";
>
> (4) the destination of the transfer must also be a place where the transferor "may lawfully possess and carry such firearm"; and
>
> (5) the firearm must be unloaded during the transfer, and "neither the firearm nor any ammunition being transported [may be] readily accessible or . . . directly accessible from the passenger compartment of [the] transporting vehicle."

*Torraco,* 615 F.3d 129 at 146–47 (Wesley, J., concurring) (quoting 18 U.S.C. § 926A). State and federal law must be applied to discern whether the first four factors are met. *See id.* Only when all five prerequisites are established to the satisfaction of either law enforcement or a court will the § 926A right attach. And when it does, "it functions as a criminal defense that may be employed to avoid a conviction based on state-law charges of illegal gun possession." *Id.*

> The "teeth" of this negative statutory right and the criminal defense that it makes available come from the Supremacy Clause. In other words, when the right arising out of § 926A applies, the state law in question must yield to the federal law that Congress enacted to create this safe harbor.

*Id.* at 147. (Wesley, J., concurring)

As this Court discussed in its earlier opinion granting the Port Authority's motion to dismiss the original complaint, *Revell v. Port Authority of N.Y. & N.J.,* No. 06-402, 2007 WL 1963017, at *5 (D.N.J. June 29, 2007), during the congressional debates, § 926A was often referred to as creating a "safe harbor." For example, Representative McCollum noted:

> This provision is designed to be a "safe harbor" for interstate travelers. No one is required to follow the procedures set forth in section 926A, but any traveler who does cannot be convicted of violating a more restrictive State or local law in any jurisdiction through which he travels.

132 Cong. Rec. H4102-03 (June 24, 1986).

When this Court dismissed Revell's claim that his rights under § 926A were violated when he was detained at Newark airport and ultimately arrested for violating New Jersey gun

13

laws, it explained that the "legislative history shows that [§ 926A] was passed as a compromise that balanced the needs of certain individuals to travel across state lines with firearms with the needs of States to keep illegal guns out of the hands of criminals," and that § 926A effectively "trumps State gun laws under limited circumstances, but does not preempt *all* State regulation of firearms, . . . leaving the States with the power to regulate firearms and to prosecute individuals who violate State gun laws." *Id.* at *5. Without applying the *Blessing* factors or expressly deciding whether § 926A created a federal right, the Court held that individuals who are arrested or charged without probable cause may already recover damages through § 1983 for the violation of their Fourth Amendment rights as a result of the unlawful seizure, and that an interpretation that § 926A provides an alternative vehicle for relief would be improper under *Graham v. Connor,* 490 U.S. 386, 395 (1989). *Revell,* 2007 WL 1963017, at *6. Implicit in the Court's analysis was the fact that individuals successfully claiming damages for arrest or charges without probable cause would necessarily have demonstrated compliance with the five prerequisites of § 926A.

In affirming the Court's dismissal of Revell's claims, the Third Circuit found that he had not complied with all of § 926A's requirements. *Revell,* 598 F.3d at 136 n.13, 137. Specifically, the court found that Revell had access to his gun and ammunition during his stay in New Jersey and therefore was "outside the scope of § 926A's protection." *Id.* at 137. In *Torraco*, Judge Wesley dropped a footnote in his concurrence, referring to the Third Circuit's opinion in *Revell*, finding that its analysis was similar to his own:

> The Third Circuit recently reasoned in an analogous fashion in *Revell v. Port Authority of New York & New Jersey,* 598 F.3d 128 (3d Cir. 2010). There, the court (impliedly) assumed that § 926A created a federal right that could support a § 1983 claim, but held that the plaintiff had not alleged that § 926A was violated because the fifth statutory prerequisite was not satisfied; that is, the firearm in

14

>question was "readily accessible," 18 U.S.C. § 926A, during the transfer. *Id.* at 136.

*Torraco,* 615 F.3d at 149 n.9.

Judge Wesley's analysis is harmonious with the legislative history of § 926A, with the reasoning previously employed by this Court, and with the Third Circuit's references to the issue at hand. This Court is satisfied that § 926A creates a negative right to a federal preemption-based criminal defense against state law convictions for violating the gun laws of pass through states when the § 926A prerequisites are met. The Court rejects the Association's premise that § 926A confers an affirmative right, or that § 926A provides the basis for injunctive relief as sought in the complaint. It does not immunize non-resident Association members from New Jersey gun laws, or prevent Port Authority officers or other law enforcement officers from detaining, questioning and arresting persons transporting firearms in violation of New Jersey state laws. Rather, § 926A provides a criminal defense to non-resident Association members transporting firearms in conformance with all of the requirements of § 926A in the event they are charged with state gun law violations. As Judge Wesley notes, "Claims for, *inter alia*, false arrest, excessive force, and malicious prosecution remain available as means for seeking redress where a state actor goes too far." *See Torraco*, 615 F.3d 129 at 148 (Wesley, J., concurring).

### C. Congress has impliedly foreclosed a remedy for the violation of § 926A through § 1983

The Court concludes, based on the foregoing reasoning, that the Association has sued under § 1983 to enforce a right that is not created by or available by means of § 926A. This leaves open the question of whether the negative right the Court finds is available under § 926A may be enforced by means of § 1983—an inquiry required under the *Blessing* analysis (and as a practical matter, very much required in a case that has seen so many configurations in its pleadings). So the Court moves to the second part of the *Blessing* inquiry—whether Congress

15

foreclosed a § 1983 remedy. Again aligning its reasoning with Judge Wesley's concurrence in *Torraco,* the Court holds that Congress has impliedly foreclosed a § 1983 remedy because the negative right to a criminal defense created by § 926A is incompatible with relief available under § 1983.

Congress implicitly forecloses § 1983 recourse where a statute includes a "comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983." *Blessing*, 520 U.S. at 341. The "'crucial consideration is what Congress intended.'" *Fitzgerald v. Barnstable Sch. Comm.,* 555 U.S. 246, 252 (2009) (quoting *Smith v. Robinson*, 468 U.S. 992, 1012 (1984)). The Supreme Court has found Congress impliedly foreclosed a § 1983 remedy in three prior cases, all of which featured "statutes [that] required plaintiffs to comply with particular procedures and/or to exhaust particular administrative remedies prior to filing suit." *Fitzgerald,* 555 U.S. at 254 (citing *Rancho Palos Verdes v. Abrams,* 544 U.S. 113, 122 (2005); *Smith,* 468 U.S. at 1011–12; *Middlesex Cnty. Sewerage Auth. v. Nat. Sea Clammers Ass'n,* 453 U.S. 1, 6 (1981)). In *Rancho Palos Verdes,* the Court concluded that Congress did not intend § 1983 to be used to remedy a violation of the Telecommunications Act of 1996 because the detailed and restrictive administrative and judicial remedies contained in the statute "are deliberate and are not to be evaded through § 1983." 544 U.S. at 124. Similarly in *Smith,* the Court found that a § 1983 remedy for a violation of the right created by the Education of the Handicapped Act had been impliedly foreclosed because "the comprehensive nature of the procedures and guarantees set out in the [statute] and Congress' express efforts to place on local and state educational agencies the primary responsibility for developing a plan to accommodate the needs of each individual handicapped child" demonstrated Congress' intent that the statute itself be the sole avenue for relief. 468 U.S. at 1011. Finally, in *Sea Clammers* the Court

considered the Federal Water Pollution Control Act and the Marine Protection, Research, and Sanctuaries Act of 1972, both of which authorized the Environmental Protection Agency to seek civil and criminal penalties for violations, permitted interested persons to seek judicial review, and provided detailed citizen suit provisions, and concluded that permitting redress through § 1983 would have thwarted Congress' intent in formulating the "unusually elaborate enforcement provisions." 453 U.S. at 13–14.

The Court agrees with Judge Wesley that albeit these cases were decided around statutes that can be distinguished from § 926A, extending their reasoning to encompass the problems presented by § 926A enforcement is a sounder way to resolve the "vexing issues" that result from the interaction of § 926A and § 1983. *Torraco,* 615 F.3d 129 at 149–51 (Wesley, J., concurring). The operative premise of the analysis is that there is a remedial scheme already at work in the application and enforcement of § 926A which is incompatible with § 1983 remedies.

First, because § 926A is not an affirmative right, its protection is only invoked after all the statutory prerequisites are met, and determining whether those requirements are met will often require judicial resolution. *See Torraco,* 615 F.3d at 150 (Wesley, J., concurring). As Judge Wesley explains, "[r]ecourse to the courts for resolution of the application of this right provides, in my view, the first step of the remedial scheme for addressing potential violations of § 926A." *Id.* Second, the criminal defense created by § 926A operates in a different context from the affirmative entitlements discussed in *Rancho Palos Verdes, Smith,* and *Sea Clammers*; enforcing § 926A rights takes place in the context of state and federal criminal law. If a conviction is obtained in violation of § 926A, it follows that the remedial mechanisms already in place within the body of criminal law will apply.

> The most directly available remedial mechanisms for those who are convicted in violation of this statute under the color of state law are direct appeals challenging

17

> the criminal conviction in question, and habeas corpus proceedings in both the state and federal courts. Additionally, in limited circumstances, money damages may also be available based on constitutional claims under § 1983 relating to wrongful arrest, prosecution, or incarceration. But the primary remedy for a violation of § 926A is to vacate the state-law conviction at issue. The remedial mechanisms available on direct appeal, in habeas corpus proceedings, and in other forms of collateral attacks are more than adequate to achieve that end, where appropriate.

*Id.* (Wesley, J., concurring).

In short, the remedial mechanisms that already exist, primarily the right to vacate a state law conviction, adequately address violations of § 926A and are largely incompatible with § 1983 enforcement. Echoing the reasoning employed by the Supreme Court in *Rancho Palos Verdes, Smith,* and *Sea Clammers,* it would thwart congressional intent to assume that in creating a criminal defense that operates within the complex framework of preexisting criminal law Congress intended §926A to be enforced through § 1983 civil actions.

Certainly it is difficult to presume, without more support than exists in the statute, that Congress's intent was to subject law enforcement officers to liability under § 1983 based on attempts to reconcile § 926A with enforcement of state gun laws. *See Torraco,* 615 F.3d at 151 (Wesley, J., concurring). The majority and concurrence in *Torraco* both found that there is "no evidence either in the text or the structure of section 926A that would indicate that Congress intended that police officers tasked with enforcing state gun laws should be liable for damages when they fail to correctly apply Section 926A." *Id.* at 137, 151. This Court agrees, noting that in *Revell,* the Third Circuit stated that "[i]t seems doubtful that, in passing § 926A Congress intended to impose upon police officers such a potentially burdensome requirement." *Revell,* 598 F.3d at 137 n.15.

Based on the foregoing, this Court finds that Congress has impliedly foreclosed enforcement of § 926A through § 1983 because a complex remedial scheme already exists within

the body of preexisting criminal law that adequately addresses criminal convictions that violate § 926A. The practical impossibilities of requiring police officers expeditiously and correctly to apply § 926A in the field further serves to demonstrate that Congress did not intend to open law enforcement up to § 1983 liability in this context.

**IV.     Conclusion**

The third amended complaint is short and specific about what it seeks. Aside from attorney's fees and costs, the complaint uses § 1983 as a vehicle to demand that the Court enjoin the defendants from enforcing New Jersey statutes, § 2C:39-5(b) and § 2C:39-3(f), against nonresident members of the Association "who are entitled to transport a firearm and ammunition through Newark Airport and other Port Authority sites pursuant to 18 U.S.C. § 926A." Based on the analysis that this Court has adopted, a violation of § 926A cannot serve as the predicate for a § 1983 cause of action, nor does § 926A immunize Association members, and it most certainly does not provide a basis for an injunction preventing state actors from enforcing New Jersey gun laws. Nor does the federal statute support the allegations in the complaint that the Port Authority and Scott Erikson violated the rights of Association members by invoking policies and procedures that serve to intimidate and coerce them into avoiding Newark Airport and other Port Authority sites. In sum, the relief sought, and the substantive basis for seeking it, are not supported by law, and the complaint must be dismissed.

The Port Authority's motion for summary judgment is granted. An appropriate order will be entered.

August 20th, 2012                                    /s/ Katharine S. Hayden
                                                                Katharine S. Hayden, U.S.D.J.